[No. F006514. Fifth Dist. Mar. 16, 1987.]

THE PEOPLE, Plaintiff and Respondent, v.
DONALD DEAN YOUNG, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

---

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of part II.

**COUNSEL**

George A. Carter and Mark Colman for Defendant and Appellant.

John K. Van de Kamp, Attorney General, James T. McNally and Thomas Y. Shigemoto, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

BEST, J.—Defendant was convicted by jury of count I, lewd and lascivious conduct with a child under the age of 14 (Pen. Code,[1] § 288, subd. (a)); count II, oral copulation with a child under the age of 14 and more than 10 years younger than defendant (§ 288a, subd. (c)); count III, forcible rape (§ 261, subd. (2)). The jury further found that defendant had substantial sexual conduct while occupying a position of special trust (§ 1203.066, subd. (a)(9)), and carnally abused a female person under the age of 10 years (§ 645). We reverse the judgment of conviction on count III and affirm the remaining convictions.

FACTS

Six-year-old S. lived in Madera with her younger brother J., her five-year-old stepsister A., her twenty-six-year-old father (defendant) and her stepmother, Diane. They initially lived in an apartment on Greenwood which they moved into in September of 1983 and subsequently in a house on Regal Road which they moved into in the first part of February 1984. Defendant had custody of S. and J. S. saw her mother on weekends.

Both defendant and Diane worked, and S. attended school when they lived in Madera.

While Diane was at work and defendant was home alone with the children at the house, defendant called S. into his bedroom. He told her to come to the bed and to get on it. He then told her to get under the covers. He put her on top of him, pulled her pants down, and had her slide down to his "private place" which she felt as she slid down. Her "private place" is her vagina. Defendant's "private place" is located between his legs but is bigger and longer than hers. Defendant touched her vagina with his finger and his penis. When he put his finger into her vagina it hurt. When he put his penis into her vagina it did not feel good. It "felt like water kinda," and when defendant stopped, S. went to the bathroom to wipe herself off. She did not believe that the digital insertion and the insertion with defendant's penis occurred on the same day.

S. did not want defendant to put his penis in her vagina, but she did not tell him as she was "too scared." She was afraid of defendant, afraid he would do something to her such as touching her on her "private place" again. Defendant, however, did not say anything to S. that made her afraid.

---

[1] All statutory references are to the Penal Code unless otherwise indicated.

While S. was under water in the spa at their house in Madera, defendant had his pants unzipped and unbuttoned with his penis sticking out. He pushed his penis into S.'s mouth, and she backed away to the other side of the spa. She recalled that she had her mouth on defendant's penis twice while in the spa. It did not taste good.

S. also recalled that defendant kissed her "titties" or chest once.

She did not want to say "bad things" about her dad because it made her "feel bad"; she still loved him and wanted to see him.

Prior to defendant having touched her vagina, S. had a cousin who did. S. had been visiting her mom in Bakersfield, and her cousin was babysitting her while her mom was at work. Prior to her cousin, no one had touched her "privates." When S. was taking a bath, she asked her mom if it was right to touch little girls there. Her mom said, "No," and asked her why. S. told her mom about her cousin, and her mom got angry. Her mom then talked with her cousin and put him on the bus.

Bonita Eckhardt, a psychologist with the Kern County Superintendent of Schools, first saw S. on August 28, 1984. She subsequently saw S. on September 8 and 23. She discovered information on September 23 which caused her to have contact with the Kern County Sheriff's office, Child Protective Services, and Dr. David T. Bird. Eckhardt was the first person to whom S. reported the incidents with defendant.

Dr. Bird, the director and chief clinical psychologist at Kern Counseling and Psychology Center, saw S. on three occasions in October 1984. S. exhibited "rather fully the damaged syndrome basis usually associated with sexual abuse." At their final session on October 8, S. recanted her allegations and then later admitted the allegations were true. This was typical of victims in sexual abuse cases.

S. described to Dr. Bird certain incidents involving her cousin which included oral copulation where he, calling his penis "George," placed "George" in S.'s mouth; S. also described an act of vaginal penetration by her cousin with his finger, sodomy, and sexual intercourse. S. also described sexual contact with a male other than her cousin, including oral copulation, digital penetration, sodomy, and sexual intercourse. Dr. Bird subjected this latter information to a number of credibility tests and determined that there were no points where the validation fell apart.

On October 1, 1984, Dr. Jess Diamond, a pediatrician, examined S. and determined her hymen was intact and elongated but there was nothing

remarkable. He also examined her rectal area and observed the anal opening to be normal in appearance. However, there was less contraction than normal. He did not see any definite physical evidence of sexual abuse, but there was also no evidence to negate an allegation of sexual abuse. He had no knowledge as to why the sphincter muscle tone was less than normal.

Deputy Hill of the Kern County Sheriff's office interviewed S. on September 23, 1984, and S. reported that defendant placed his mouth on her breast and she felt a "lick." S. also described an act of digital penetration and penetration by penis. She described the digital penetration and penetration by penis as occurring one right after the other. She described having pain with respect to the digital penetration.

## I

*Sufficiency of the evidence to support defendant's conviction of rape by force or fear.*

■ Defendant challenges the sufficiency of the evidence to support his conviction of rape, and we must, therefore, determine whether, if properly instructed, "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (*Jackson* v. *Virginia* (1979) 443 U.S. 307, 319 [61 L.Ed.2d 560, 573, 99 S.Ct. 2781].)

In the recent case of *People* v. *Barnes* (1986) 42 Cal.3d 284 [228 Cal.Rptr. 228, 721 P.2d 110], the California Supreme Court set forth the appropriate standard of review when a challenge is made to the sufficiency of the evidence in a criminal case. ■ "The proper test to determine a claim of insufficient evidence in a criminal case is whether, on the entire record, a rational trier of fact could find appellant guilty beyond a reasonable doubt. (*People* v. *Johnson* (1980) 26 Cal.3d 557, 576-578 . . .; *Jackson* v. *Virginia* (1979) 443 U.S. 307, 318-319 . . . .) In making this determination, the appellate court ' "must view the evidence in a light most favorable to respondent and presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence." [Citations.] . . . "[O]ur task . . . is twofold. First, we must resolve the issue in the light of the *whole record* . . . . Second, we must judge whether the evidence of each of the essential elements . . . is *substantial* . . . ." ' (*People* v. *Johnson, supra,* 26 Cal.3d at pp. 576-577, italics in original.)

■ "Although the appellate court must ensure the evidence is reasonable in nature, credible, and of solid value (*People* v. *Johnson, supra,* 26 Cal.3d at p. 576), it must be ever cognizant that ' "it is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth

or falsity of the facts upon which a determination depends ....." ' (*People v. Thornton* (1974) 11 Cal.3d 738, 754 ..., disapproved on other grounds, *People v. Flannel* (1979) 25 Cal.3d 668, 684, fn. 12 [160 Cal.Rptr. 84].) Thus, if the verdict is supported by substantial evidence, this court must accord due deference to the trier of fact and not substitute its evaluation of a witness's credibility for that of the fact-finder. (*People v. Samuel* (1981) 29 Cal.3d 489, 505 ...; *People v. Kerr* (1951) 37 Cal.2d 11, 15 ....)" (*Id.* at pp. 303-304.)

Prior to its amendment in 1980, section 261, subdivisions (2) and (3), defined rape as an "act of sexual intercourse, accomplished with a person not the spouse of the perpetrator ..." under circumstances where the person resists, but where "resistance is overcome by force or violence" or where "a person is prevented from resisting by threats of great and immediate bodily harm, accompanied by apparent power of execution ...." (Stats. 1979, ch. 994, § 1, p. 3383.) The 1980 amendment, in defining rape by force or fear, deleted all reference to resistance by the victim and subdivision (2) defined rape as an act of sexual intercourse accomplished with a person not the spouse of the perpetrator "[w]here it is accomplished against a person's will by means of force or fear of immediate and unlawful bodily injury on the person or another." (Stats. 1980, ch. 587, § 1, p. 1595.)

Section 263, as amended in 1979, provides: "The essential guilt of rape consists in the outrage to the person and feelings of the victim of the rape. Any sexual penetration, however slight, is sufficient to complete the crime."

Section 261.6 was enacted in 1982 and provides: "In prosecutions under Section 261, 286, 288a, or 289, in which consent is at issue, 'consent' shall be defined to mean positive cooperation in act or attitude pursuant to an exercise of free will. The person must act freely and voluntarily and have knowledge of the nature of the act or transaction involved." (Stats. 1982, ch. 1111, § 3, p. 4025.)

In *People v. Bermudez* (1984) 157 Cal.App.3d 619 [203 Cal.Rptr. 728], this court noted, in considering the effect of section 261.6 and the 1980 amendment to section 261, "Though not applying section 261.6 to this case, we find nothing novel in its emphasis on positively displayed willingness to join in the sexual act rather than mere submissiveness. The law has outgrown the resistance concept; a person demanding sexual favors can no longer rely on a position of strength which draws no physical or verbal protest." (*Bermudez, supra,* at p. 624.)

In *People v. Barnes, supra,* 42 Cal.3d 284, the Supreme Court concluded that the legislative purposes in amending section 261 "were (1) to relieve

the state of the need to establish resistance as a prerequisite to a rape conviction, and (2) to release rape complainants from the potentially dangerous burden of resisting an assailant in order to substantiate allegations of forcible rape." (*Barnes, supra,* at p. 302.) The Supreme Court further noted: "Under prior law, forcible rape required that the accused employ that degree of force necessary under the circumstances to overcome the victim's resistance. (*People* v. *Wheeler* (1977) 71 Cal.App.3d 902, 907 . . . .) Although resistance is no longer the touchstone of the element of force, the reviewing court still looks to the circumstances of the case, including the presence of verbal or nonverbal threats, or the kind of force that might reasonably induce fear in the mind of the victim, to ascertain sufficiency of the evidence of a conviction under section 261, subdivision (2). (See *People* v. *Bermudez* (1984) 157 Cal.App.3d 619, 624 . . .; *People* v. *Hunt, supra,* 72 Cal.App.3d at p. 194; cf. *People* v. *Bradbury* (1907) 151 Cal. 675, 677 . . . .) Additionally, the complainant's conduct must be measured against the degree of force manifested or in light of whether her fears were genuine and reasonably grounded. (*Bermudez, supra,* 157 Cal.App.3d at pp. 624-625; see also *People* v. *La Salle* (1980) 103 Cal.App.3d 139, 149 . . .; *Hunt, supra,* 72 Cal.App.3d at pp. 194, 198; *People* v. *Harris* (1951) 108 Cal.App.2d 84, 89 . . .; see also *State* v. *Rusk* (1981) 289 Md. 230 . . . and cases cited therein at fn. 3.) In the words of one commentator, the trier of fact 'should be permitted to measure consent by weighing both the acts of the alleged attacker and the response of the alleged victim, rather than being required to focus on one or the other.' (*Consent Standard, supra,* U.Chi.L.Rev. at p. 627.)" (*Id.* at p. 304, fn. omitted.)

Although the Supreme Court in *Barnes* sets forth guidelines to be followed in assessing whether force or fear is shown in a particular case, the court does not attempt to define the degree of force necessary to support a rape conviction under the present law. Furthermore, the guidelines suggested in *Barnes* are of little assistance in cases like the one at bar where the victim is of tender years, incapable of legal consent, and, possibly, because of immaturity, completely unaware of the nature or consequences of an act of sexual intercourse. As the *Barnes* court recognized at footnote 20 of its opinion, different rules may apply, depending on the circumstances of the case.

This court recently recognized that in a child-victim case where the defendant was in a position of authority, evidence of force or fear which would probably be insufficient in an adult-victim case was sufficient to support rape convictions in that case. (*People* v. *Jones* (1984) 155 Cal.App.3d 153, 168-169 [202 Cal.Rptr. 162].)

In *People* v. *Jones, supra,* 155 Cal.App.3d 153, defendant was convicted on multiple counts of rape by threat of great and immediate bodily harm. Defendant lived with a woman who had four female children. The victims

were three of these children and one of their friends. At the time of the alleged crimes, the victims ranged in age from nine to fifteen years. Although there was no evidence that defendant made any specific threats with respect to those counts for which he was convicted of rape by threat of great and immediate bodily harm, there was evidence that he had engaged in a pattern of exploitative sexual conduct with the victims over a period of nine years, and that, during that time, he had punished them by slapping and spanking them. This court affirmed the convictions in a majority decision (Justice Andreen dis.), holding that there was substantial evidence to support defendant's convictions on the counts charging rape by fear of great and immediate bodily harm, despite the absence of any testimony relating to force or threats. The court held that a threat may be inferred from conduct, and, under all the circumstances (the victims' young ages, together with the position of authority held by defendant for a period of nine years, the uselessness of resistance, the deeply embedded and conditioned fear of punishment and retribution, the natural submission to the authority of the parent which contributed to the victims' vulnerability, and their perception of defendant's conduct as an implied threat of immediate and great bodily harm if they were to resist), the evidence was sufficient to support the convictions. (*People* v. *Jones, supra,* 155 Cal.App.3d 153, 172-173, 174, 177.)

■ Where, as here, the alleged victim is a child below the age of legal consent, whether the child has the capacity to "consent" to an act of sexual intercourse within the meaning of section 261.6 will usually be a question of fact. When it is charged that an act is against the will of a person, " 'consent is at issue.' " (*People* v. *White* (1986) 179 Cal.App.3d 193, 202 [224 Cal.Rptr. 467].) It will be for the trier of fact to determine, based upon the age and maturity of the child and the circumstances as shown by the evidence in a particular case, whether the child is capable of "positive cooperation in act or attitude pursuant to an exercise of free will" or able to "act freely and voluntarily" with "knowledge of the nature of the act or transaction involved." (§ 261.6; see *People* v. *White, supra,* 179 Cal.App.3d 193, 202.)[2]

If it is found that the defendant accomplished an act of sexual intercourse with the child and the child is found not to have consented to the act within the meaning of section 261.6, the trier of fact may conclude that the act was committed against the victim's will. The next issue to be determined is whether the act was accomplished by means of force or fear of unlawful bodily injury. ■ In a case such as the one at bar, in order to establish force within the meaning of section 261, subdivision (2), the prosecution

---

[2]We note that in any sexual intercourse case involving a child-victim under the age of 14, as here, a defendant is subject to conviction of violations of sections 261.5 (unlawful sexual intercourse with female under age 18) and 288, subdivision (a) (lewd or lascivious acts with child under age 14) even where the child consents to the sexual intercourse.

need only show the defendant used physical force of a degree sufficient to support a finding that the act of sexual intercourse was against the will of the child. As stated in *People* v. *Cicero* (1984) 157 Cal.App.3d 465, 475 [204 Cal.Rptr. 582], "in this scenario, 'force' plays merely a supporting evidentiary role, as necessary only to insure an act of [sexual] intercourse has been undertaken against a victim's will."[3]

■ In the instant case, substantial evidence was presented through S.'s testimony which would support a finding by the jury that defendant accomplished an act of sexual intercourse with S. by means of force and against her will. S. testified that defendant called to her to come into his bedroom. When she entered, defendant was sitting on the bed "sort of leaning on the pillow" with the covers over him. He patted the bed and told her to "come here." S. got on the bed and defendant told her to get under the covers and "lay down." She did so and defendant put his arms around her. S. was wearing a top, shorts and panties. Defendant then sat her on top of him, pulled her pants down and put his finger in her "private place" which hurt inside her "private place." Defendant made her "scoot down" and she felt hair and defendant's "private place." Defendant then put his "private place" in her "private place." This did not feel good. She did not want defendant to put his "private place" in her "private place" but did not tell him because she was "too scared." She was afraid that he would put his finger in her "private place" again. Another word for her "private place" is "vagina." Defendant never said anything to S. to make her afraid.

Under the evidence, the jury could properly conclude that S. had the capacity to exercise free will and had knowledge of the nature of the act, especially since she had had a prior sexual experience with her cousin. The jury could also properly find that the act of sexual intercourse was against S.'s will since she did not want to do it and the evidence did not otherwise establish positive cooperation in act or attitude. Finally, some force was used by defendant in both the penetration and the physical movement and positioning of S.'s body in accomplishing the act.

■ We also conclude, however, that there is no substantial evidence

---

[3]We are aware that in *People* v. *Cicero, supra,* 157 Cal.App.3d 465, 474 and, subsequently, in *People* v. *Pitmon* (1985) 170 Cal.App.3d 38, 52 [216 Cal.Rptr. 221], the Third Appellate District has held that in order to establish "force" within the meaning of section 288, subdivision (b), the People must show the defendant used physical force "substantially different from or substantially greater than that necessary to accomplish the lewd act itself." We are of the view, however, that those cases are distinguishable in that a mere touching with the requisite intent may constitute a lewd and lascivious act under section 288 (*People* v. *Morales* (1967) 254 Cal.App.2d 194, 198-199 [61 Cal.Rptr. 764]), while forcible rape under section 261, subdivision (2), requires penetration, however slight, of the female's vagina by the penis of the male. (§ 263.)

that defendant accomplished the act of sexual intercourse by means of fear of immediate and unlawful bodily injury. By the use of the disjunctive word "or," it is clear the Legislature intended two distinct ways in which a violation of section 261, subdivision (2), can occur, i.e., by "force" or "fear." By eliminating the resistance requirement, the Legislature clearly intended to change prior law with regard to the use of force in rape. No such intent appears with regard to the fear element. In this respect, it is not enough for the prosecution to show that sexual intercourse was accomplished against the will of the victim by means of fear. There is a further requirement that the victim fear "immediate and unlawful bodily injury." Even an unreasonable fear may suffice "if the accused knowingly takes advantage of that fear in order to accomplish sexual intercourse." (*People* v. *Barnes, supra,* 42 Cal.3d at p. 304, fn. 20.)

 Here, unlike the *Jones* case, *supra,* 155 Cal.App.3d 153, there was no evidence of a threat or prior threat of bodily harm such as a spanking. Moreover, defendant did not do or say anything that could induce fear of immediate and unlawful bodily injury. Nor did S. ever state or otherwise indicate to defendant that she was "scared" of such injury. Therefore, the jury could not reasonably have concluded that defendant committed a rape by means of fear of immediate and unlawful bodily injury. Any further proceedings on the rape count based on this theory are barred by the double jeopardy clause. (*People* v. *Green* (1980) 27 Cal.3d 1, 62 [164 Cal.Rptr. 1, 609 P.2d 468].)

 In this case, the prosecution failed to argue either a force or fear theory of rape to the jury. Both counsel ignored the issue of sufficiency of evidence and focused instead on credibility of the witnesses. From this record, we are unable to state with any degree of certainty which theory the jury may have used to find defendant guilty of rape. Reversal is therefore required.[4] (*People* v. *Green, supra,* 27 Cal.3d 1, 69; *People* v. *Houts* (1978) 86 Cal.App.3d 1012, 1019 [150 Cal.Rptr. 589].)

---

[4]We note that the conviction on count III would have to be reversed in any event because of erroneous instructions as to the crime of rape.

The jury was instructed from CALJIC No. 10.00 (1982 revision) (see exhibit "A" attached) on the rape count as follows: "The defendant is charged in Count Three of the Information with the commission of the crime of rape, violation of Section 261 of the Penal Code.

"The crime of rape as charged against the defendant in this case is an act of sexual intercourse with a person who is not the spouse of the perpetrator accomplished against the will of such person by means of force.

"In order to prove the commission of the crime of rape, each of the following elements must be proved:

"1. that the defendant engaged in the act of intercourse with the person,

"2. that such other person was not the spouse of the perpetrator, and

"3. that the act of intercourse was against the will of such other person, and

## II*

. . . . . . . . . . . . . . . . . .

### DISPOSITION

The judgment of conviction is reversed on count III and all other convictions are affirmed. The case is remanded for retrial or resentencing.

Woolpert, Acting P. J., and Vartabedian, J.,† concurred.

---

"4. that the act was accomplished by means of force *or fear*." (Italics added.)

If the trial court intended to submit the rape count to the jury on both theories included in section 261, subdivision (2), i.e., rape "by force" and rape "by fear of immediate and unlawful bodily injury," it was error for the court to omit from its reading of CALJIC No. 10.00 (1982 revision) the third paragraph. "[the crime of rape as charged against the defendant in this case is [also] an act of sexual intercourse with [a person who is not] the spouse of the perpetrator accomplished against such person's will by means of fear of immediate and unlawful bodily injury [to such person] . . . ." and subparagraph 4b of the final paragraph "4b. That such act was accomplished by means of fear of immediate and unlawful bodily injury [to such person] . . . ." If the only theory intended to be submitted to the jury was rape "by force," it was error for the court to add the words "or fear" to subparagraph 4a of the final paragraph.

*See footnote, *ante,* page 248.

†Assigned by the Chairperson of the Judicial Council.

EXHIBIT A
(Page 1)

124

CALJIC 10.00 (1982 Revision)

RAPE OF SPOUSE, NON--SPOUSE--BY FORCE
OR WILL OVERCOME BY THREATS

| Requested by People | / | Given as Requested | ✓ | Refused | |
| Requested by Defendant | | Given as Modified | | Withdrawn | |
| | | Given on Court's Motion | | | |

Judge

[Defendant is charged in [Count _III_ of] the information with the commission of the crime of rape, a violation of Section [261] [~~262~~] of the Penal Code.]

The crime of rape as charged against the defendant in this case is an act of sexual intercourse with [a person who is not] the spouse of the perpetrator accomplished against the will of such person by means of force.

~~[the crime of rape as charged against the defendant~~ in this case is [also] an act of sexual intercourse with [a person who is not] ~~the spouse~~ of the perpetrator accomplished ~~against such~~ person's will by means of fear ~~of immediate~~ and unlawful bodily injury [to such ~~person] [[or] [to _____].]~~
 name of third person

~~[the crime of rape as charged against the defendant~~ in this case is [also] an act of sexual intercourse with a person who is not the ~~spouse of the~~ perpetrator accomplished against such ~~person's~~ will by threatening to kidnap or falsely ~~imprison~~, or to inflict extreme pain, serious ~~bodily~~ injury or death in the future against the ~~victim~~ or any other person and there is a ~~reasonable~~ possibility that the perpetrator will execute ~~the threat.]~~

In order to prove the commission of the crime of rape, each of the following elements must be proved:

1. That the defendant engaged in an act of intercourse with a person,

2. That such other person was [not] the spouse of the perpetrator,

3. That the act of intercourse was against the will of such other person, and

ExHIBIT A
(Page 2)

125

[4a. That the act was accomplished by means of
force.] [or]

[4b. That such act was accomplished by means of
fear of immediate and unlawful bodily injury
[to such person]: [or] [to _____].]
 name of third person

[4c. That such act was accomplished by threatening
to kidnap or falsely imprison, or to inflict
extreme pain, serious bodily injury or death
in the future against the victim or any other
person and there was a reasonable possibility
that the perpetrator would execute the threat.]