Filed 10/17/13  P. v. Mena CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.111.5.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>EDGARDO OTTONIEL MENA,<br><br>    Defendant and Appellant. | 2d Crim. No. B243872<br>(Super. Ct. No. BA377299)<br>(Los Angeles County) |

Edgardro Ottoniel Mena appeals his conviction by jury of four counts of lewd acts upon a child under the age of 14 (counts 1-3 & 9; Pen. Code, § 288, subd. (a))[1], three counts of aggravated sexual assault of a child by means of rape  (counts 4-6; § 269, subd. (a)(1)), and two counts of aggravated sexual assault of a child by means of forcible oral copulation (counts 7- 8; § 269, subd. (a)(4)) with special findings that appellant committed the offenses against more than one victim (§ 667.61, subd. (c)).  The trial court denied probation and sentenced appellant to 105 years to life state prison.   We affirm.

Viewed in a light most favorable to the judgment (*People v. Johnson* (1980) 26 Cal.3d 557, 576), the evidence shows the following:

---

[1] All statutory references are to the Penal Code unless otherwise stated.

*Counts 1 through 8 - Y. D.*

During the 2009-2010 school year, 11-year-old Y. D. lived with her parents, her step grandparents, and appellant, her step-uncle. Appellant touched Y.'s vagina on the outside of her clothes and, on other occasions, touched her under her clothing. Appellant warned Y. that if she told anyone, her step-grandmother would die and there would be "problems at the house." Y. knew that the grandmother was in poor health and that "problems at the house" meant that his stepfather would get "crazy" and there would be physical fights. Y. was scared and told no one.

Appellant put his penis in her vagina on at least three occasions. The first time, appellant pushed Y. onto his bed, pulled down her pants, restrained her hands, and pushed his penis into her vagina.

The next time, appellant entered Y.'s bedroom when Y. and her brothers were asleep. Appellant kept the lights off and pushed his penis into her vagina. Y. was too scared to scream or call out for help. It happened on a Saturday night, while the adult family members were playing cards and drinking in the garage.

On three other occasions, appellant forced Y. to orally copulate him. Appellant pushed her down on her knees, forced his penis into her mouth, and pushed on her head until he ejaculated.

The third rape occurred when Y.'s parents left the house to pay the rent. Appellant locked Y. in his bedroom, put her face down on the bed, pulled her sweat pants down, and put his penis in her vagina. When a family member came looking for Y., appellant went out the back door. The stepfather screamed at Y. and demanded to know why she was in appellant's room. Y. was too scared to answer.

The next week, Y. told her teacher that appellant was putting his private parts into her private parts. Y. also spoke to the police.

Los Angeles City Police Detective Brenda Salazar arrested appellant several months later. After advisement and waiver of his constitutional rights; appellant said that Y. would come into his bedroom, lie on the bed, and touch his penis. Appellant stated that Y. was to blame and that she had sexual intercourse with him on two occasions.

2

On three other occasions, Y. touched his penis and orally copulated him. Appellant admitted that it was against the law and said that he learned his lesson after the family broke up because of what he and Y. had done.

*Count 9 - Ana L..*

Ana L. testified that appellant molested her in 2003 when she was four years old. Ana's father worked with appellant and gave him a ride home after a party. Appellant sat in the back seat where Ana and Ana's baby sister were riding. Ana awoke to find her pants unbuttoned. Appellant laughed, touched her vagina, and pretended he was tickling her.

Ana's father, Eduardo M., saw appellant moving his hand, stopped the car, and saw that Ana's pants were unbuttoned. Eduardo asked what happened. Ana replied, "This guy touched me here," pointing to her vagina. Eduardo pulled appellant out of the car and hit him as he fled. Ana was taken to the hospital and underwent a SART examination.

*Miranda*

Appellant argues that his statement is inadmissible because he was not immediately advised of his *Miranda* rights (*Miranda v. Arizona* (1966) 384 U.S. 436 [16 L.Ed.2d 694]) when first arrested. Appellant forfeited the error by not specifically raising it at trial. (*People v. Michaels* (2002) 28 Cal.4th 486, 512; *People v. Ray* (1996) 13 Cal.4th 313, 339.)

On the merits, appellant's statement was properly admitted. A custodial interrogation occurs for *Miranda* purposes where the suspect is in custody and asked questions reasonably likely to elicit an incriminating response. (*Rhode Island v. Innis* (1980) 446 U.S. 291, 300-301 [64 L.Ed.2d 297, 307-308].) Appellant was not interviewed until he arrived at the police station. Before advising him of his *Miranda* rights, Detective Salazar asked appellant where he lived and where he worked. *Miranda* warnings are not required for routine background or booking questions (*People v. Andreasen* (2013) 214 Cal.App.4th 70, 86-87.)

Appellant was then advised of his *Miranda* rights and asked "do you know why the police . . . want to talk to you?"  Appellant said that he used to live with his brother's family  and that Y. would come to his bedroom for help with her school work.

Detective Salazar said that Y. was in love with him and "she told me what happened between you two . . .  when the mom was not there."  Appellant admitted that Y. would sit on his bed and touch his private parts when he was drunk.  Detective Salazar said, "I need to know . . . if it was a mistake, [and that] . . . there are programs we can put you in, to get you some help."

Appellant argues that it was a coercive interrogation because Detective Salazar "softened" him up and took a sympathetic approach to elicit incriminating statements.  The use of deceptive comments and psychological ploys do not undermine the voluntariness of a defendant's  statements. (*People v. Williams*  (2010) 49 Cal.4th 405, 443.) " 'Once a suspect has been properly advised of his rights, he may be questioned freely so long as the questioner does not threaten harm or falsely promise benefits.  Questioning may include exchanges of information, summaries of evidence, outline of theories of events, confrontations with contradictory facts, even debate between police and suspect. . . .' [Citation.]"  (*People v. Halloway* (2004) 33 Cal.4th 96, 115.)

We have reviewed the *Miranda* interview which was recorded and transcribed.  No promises were made and there is no evidence that appellant was led to believe that he might reasonably expect more lenient treatment if he confessed.  (*People v. Hill* (1967) 66 Cal.2d 536, 549.)  Appellant makes no showing that he was tricked or coerced, or that his due process rights were violated.  (*People v. Linton* (2013) 56 Cal. 4th 1146, 1172; *People v. Williams, supra,* 49 Cal.4th at pp. 436-437.)  Nor were Detective Salazar's efforts to establish a rapport with appellant a coercive police tactic violative of the Fifth Amendment. (*People v. Bradford* (1997) 14 Cal.4th 1005, 1043.)

The alleged error, if any, in admitting appellant's statement was harmless beyond a reasonable doubt.  (*Chapman v. California* (1967) 386 U.S. 18, 24 [17 L.Ed.2d 705, 710-711]; *Arizona v. Fulminante* (1991) 499 U.S. 279, 306-310 [113 L.Ed.2d 302, 328-331]; *People v. Johnson* (1993) 6 Cal.4th 1, 32-33.)  Y.'s testimony was corroborated by her

4

statements to her godmother, school authorities, and the police. Appellant's brother suspected that something was going on and confronted Y., as did the step-grandmother.

The jury was instructed that appellant's statement should be considered with caution (CALCRIM 358) and that appellant may not be convicted of any crime based on his out-of-court statements alone (CALCRIM 359). Appellant defended on the theory that Y. was to blame and initiated the sex. The grandmother testified that she frequently saw Y. try to get into appellant's room and told her five or six times that it was not right. On cross-examination, the grandmother opined that if appellant and Y. were having sex, they were both at fault. It was strong evidence of guilt.

### Force or Duress

Appellant argues that the evidence does not support the finding that force or duress was used in counts 4 through 8 for aggravated sexual assault by means of rape and forcible oral copulation. The jury was instructed that aggravated sexual assault of a child under the age of 14 requires that the prosecution prove that appellant committed "rape by force, fear or threats on another person." (CALCRIM 1123.) On counts 7 and 8 for forcible oral copulation, the jury was instructed that the prosecution must prove that appellant "accomplished the act by force, violence, duress, menace, or fear of immediate and unlawful bodily injury to someone. [¶] . . . [¶] Duress means a direct or implied threat of force, violence, danger, hardship, or retribution that causes a reasonable person to do or submit to something that he or she would not otherwise do or submit to. When deciding whether the act was accomplished by duress, consider all the circumstances, including the age of the other person and her relationship to the defendant." (CALCRIM 1015; see *People v. Leal* (2004) 33 Cal.4th 999, 1004.)

Appellant argues that he did not use force in excess of that necessary to accomplish the sex acts. (See e.g., *People v. Senior* (1992) 3 Cal.App. 4th 765, 774.) But physical force and duress (i.e. psychological coercion) are not the same. "The fact that the victim testifies the defendant did not use force or threats does not require a finding of no duress; the victim's testimony must be considered in light of her age and relationship to the defendant." (*People v. Cochran* ( 2002) 103 Cal.App.4th 8, 14.)

5

Citing *People v. Espinoza* (2002) 95 Cal.App.4th 1287 (*Espinoza*), appellant argues that psychological coercion without more does not establish duress. In *Espinoza* defendant molested his 12-year-old daughter but "[n]o evidence was adduced that [the] defendant's lewd act and attempt at intercourse were accompanied by any 'direct or implied threat' of any kind. While it was clear that [the victim] was afraid of the defendant, no evidence was introduced to show that this fear was based on anything [the] defendant had done other than to continue to molest her." (*Id.*, at p. 1321.)

Our courts have distinguished *Espinoza* where there is a large discrepancy in size and age between the defendant and the victim that affects the victim's sense of physical vulnerability. (*People v. Superior Court* (*Kneip*) (1990) 219 Cal.App.3d 235, 239; *People v. Cochran, supra,* 103 Cal.App.4th at pp. 14- 15; *People v. Pitmon* (1985) 170 Cal.App.3d 38, 51; *People v. Veale* (2008) 160 Cal.App.4th 40, 48.) Appellant was seven inches taller, 80 pounds heavier, and 20 years older than Y. Duress was established by the frequent family contact, a long and trusting relationship, appellant's position of authority, the use of an isolated place to commit the molestations (locked bedroom), and appellant's warning that there would be dire consequences if Y. told anyone. (*People v. Superior Court* (*Kneip*), *supra,* 219 Cal.App. 3d at pp. 238-239; *People v. Cochran*, *supra,* 103 Cal.App.4th at p. 15.) .) "A simple warning to a child not to report a molestation reasonably implied the child should not otherwise protest or resist the sexual imposition." (*People v. Senior*, supra, 3 Cal.App.4th at p. 775.) The evidence clearly supports the finding that appellant committed the charged offenses by duress. " 'Th[e] record paints a picture of a small, vulnerable and isolated child who engaged in sex acts only in response to [appellant's frequent contact with the family] and physical authority. Her compliance was derived from intimidation and the psychological control he exercised over her and was not the result of freely given consent.' " (*People v. Veale*, supra, 160 Cal.App. 4th at p. 48, fn. omitted.) A rational trier of fact can find duress where there is an "inherent imbalance of power in an encounter between a child and an adult bent on sexual conduct." (*People v. Soto* (2011) 51 Cal.4th 229, 245-246.)

The evidence further shows that appellant used force in both the penetration and the physical movement and positioning of the victim. (*People v. Young* (1987) 190 Cal.App.3d 248, 258.) Appellant locked his bedroom door, pushed Y. on the bed, and restrained her hands to accomplish the rape on two occasions. The rape in Y.'s bedroom occurred while Y.'s brothers were asleep in the same bed. Y. was too scared to scream or call out for help. On other occasions, appellant grabbed Y.'s head, pushed her down to her knees, and moved her head with his hand until he ejaculated in her mouth.

*Count 9*

Appellant claims that the evidence does not support the conviction for lewd conduct on Ana L. As in any sufficiency of the evidence appeal, we review the record in the light most favorable to the judgment and presume the existence of every fact the jury could reasonably deduce from the evidence in support of the judgment. (*People v. Ochoa* (1993) 6 Cal.4th 1199, 1206.)

Ana testified that appellant unbuttoned her pants and touched her vagina. The testimony of a single witness is sufficient. (*People v. Young* (2005) 34 Cal.4th 1149, 1181.) Ana's testimony was corroborated by her father who saw appellant moving his hand. The father stopped the car, opened the hatchback and saw that Ana's pants were unbuttoned. Ana said "this guy touched me here," pointing to her vagina. Appellant got out of the vehicle and fled. In a *Miranda* interview seven years later, appellant said he was "playing" with Ana and tickling her stomach.

*Preliminary Hearing Evidence*

Appellant claims that the evidence at the preliminary hearing was insufficient to bind him over for trial on count 9 (lewd conduct), on one of the child rape counts (count 6), and on the element of force or duress with respect to counts 4 through 8. Insufficiency of the evidence at the preliminary hearing is not a jurisdictional defect cognizable on appeal. (*People v. Alcala* (1984) 36 Cal.3d 604, 628.) Appellant makes no showing that the purported evidentiary irregularities at the preliminary hearing resulted in an unfair trial. (*People v. Letner* (2010) 50 Cal.4th 99, 140.) "Where the evidence produced at trial amply

7

supports the jury's finding, any question whether the evidence produced at the preliminary hearing supported the finding of probable cause is moot." (*People v. Crittenden* (1994) 9 Cal.4th 83, 137.)

Appellant's remaining arguments have been read and considered, and merit no further discussion.[2]

The judgment is affirmed.

NOT TO BE PUBLISHED.


YEGAN, J.

We concur:


GILBERT, P.J.


PERREN, J.

---

[2] Appellant, in his reply brief, argues for the first time that he did not expressly waive his *Miranda* rights and the trial court erred in finding an implied waiver. The reply brief further states that the denial of appellant's section 995 motion to dismiss count 9 prejudiced appellant because the sexual assault of Ana was remote in time and should have been excluded as propensity evidence. (Evid. Code, §§ 352; 1102, subd. (a).) We ordinarily decline to decide issues raised for the first time in a reply brief. (*People v. Senior, supra,* 33 Cal.App.4th at p. 537.) Absent a showing of good cause, issues raised for the first time in a reply brief may be deemed forfeited. (*People v. Adams* (1990) 216 Cal.App.3d 1431, 1441, fn. 2.)

William C. Ryan, Judge

Superior Court County of Los Angeles

_____

Antonio M. Zaldana, for Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Steven D. Matthews, Supervising Deputy Attorney General, J. Michael Lehmann, Deputy Attorney General, for Plaintiff and Respondent.