Filed 9/11/17; pub. order 9/29/17 (see end of opn.)

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E065260 |
| v. | (Super.Ct.No. FWV1404841) |
| EDWARD LEWIS THOMAS, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County. Cara D. Hutson, Judge. Affirmed.

David McNeil Morse, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Charles C. Ragland, and Adrian R. Contreras, Deputy Attorneys General, for Plaintiff and Respondent.

1

I

INTRODUCTION[1]

Defendant Edward Lewis Thomas repeatedly molested his daughter for 10 years, beginning when she was four or five years old.  He admitted his conduct in a pretextual telephone call with his daughter and in a letter to her mother.  A jury convicted defendant of nine counts of aggravated sexual assault on a child.[2]  The court sentenced him to a total indeterminate sentence of 135 years to life.

On appeal, defendant argues that there is no substantial evidence that he committed his crimes by means of force, fear, menace, or duress.  He further argues that his counsel's failure to object to the detective's testimony about the timeline of the oral copulation constituted ineffective assistance of counsel.  Viewing the evidence in the light most favorable to the judgment, we hold that substantial evidence supports a finding of aggravated sexual crimes because of defendant's ongoing physical violence against the victim.  Defendant's claim of ineffective assistance of counsel fails on the merits.  Accordingly, we affirm the judgment.

---

[1] All statutory references are to the Penal Code unless stated otherwise.

[2] Six counts of violating section 269, subdivision (a)(4), aggravated sexual assault of a child by oral copulation; two counts of violating section 269, subdivision (a)(5), aggravated sexual assault of a child by sexual penetration; and one count of violating section 269, subdivision (a)(1), aggravated sexual assault of a child by rape.

2

## II

## STATEMENT OF FACTS

Defendant was born in 1962.  Defendant married Lucy, Jane Doe's mother, in 1989.  Jane Doe was born in 1990.  Her parents separated in 1995 and divorced in 2001. Between 1996 and 2006, Jane Doe would stay with defendant on the weekends.  At trial, Jane Doe was 25 years old and stationed with the U.S. Army in Germany.

*Sexual Abuse for 10 Years*

Jane Doe slept in the same bed with defendant until she was about nine or ten years old.  Defendant repeatedly sexually abused Jane Doe once or twice a month until she was about 14 years old.  Defendant would hit Jane Doe on her hands or buttocks and would yell at her.  Jane Doe did not tell anyone about the sexual abuse because she was very scared of defendant hitting her "a lot really hard."  As she got older, defendant would give her a "very stern look like an angry stare"—she knew meant she was probably going to be beaten.  She believed if she told anyone about defendant, then he would beat her again.

Jane Doe did not tell her mother because she worked most of the time and they did not have a close relationship.  Once she tried to tell her mother she did not want to visit defendant but she was afraid to anger him.

Sexual abuse became a normal way of life for Jane Doe.  She could recall  specific incidents of abuse which involved "something different than what [she] was used to, or it would be painful, or . . . something new" that would confuse her.  When she eventually told the police, she could only estimate her age.

3

In 1994 or 1995, Jane Doe was about four or five years old when she lived in an apartment in Chino with defendant and her mother. Defendant would watch Jane Doe while her mother worked.

One day when they were alone, defendant took Jane Doe into the bathroom. Defendant placed the child on the sink facing the mirror and began massaging her genitals and penetrating her vagina with his hand for about five to ten minutes. Jane was scared. Another incident occurred about a year or two later. Other incidents occurred but Jane Doe was not sure whether they happened at the Chino apartment.

When Jane Doe was six or seven years old, defendant lubricated her inner thighs with lotion and rubbed his penis up and down until he ejaculated. Defendant used lotion on multiple occasions. When Jane Doe saw defendant putting lotion on the nightstand, it made her nervous because she knew that meant that something sexual was about to happen.

Jane Doe was about eight to 10 years old at the Olive Grove Apartments in Fontana. While Jane Doe was in bed, defendant pulled her to the edge of the bed, knelt down, and orally copulated her for about 10 to 15 minutes.

Once Jane Doe was asleep on a futon and covered with a blanket. Defendant used the blanket to cover her face and rubbed her genitals[3] with his hands until she had an orgasm. During another incident at the Fontana apartment, Jane Doe was sleeping in a

---

[3] The witness used the word "vagina" colloquially to refer to the vulva, the external female sexual organs.

chair when defendant again began touching her breasts and vulva until she climaxed. Defendant regularly would approach Jane Doe and touch her.

Another time, when Jane Doe was about ten or 12 years old, defendant tried to penetrate her vagina with his penis. Defendant told her to undress and directed her to sit on him while he lay on the bed and insert his penis. When she tried to do so, it hurt her so defendant had Jane Doe rub his penis until he ejaculated. Defendant also directed Jane Doe to copulate him orally for five or ten minutes until he told her to stop.

Defendant continued to perform oral copulation on Jane Doe when she was 10, 11, and probably 12 years old. Defendant also had her sit on him with her vulva touching his face. Her legs began to hurt and, when she told defendant that she was uncomfortable, defendant stopped. She did not remember how old she was or where it happened.

When Jane Doe was in fifth grade, defendant began hitting her with his belt because she got a "D" in Math. He struck her across her buttocks and the back of her thighs and she could not sit down properly for about two to three days.

Another incident of physical abuse occurred when Jane Doe was in San Bernardino and involved buying ice cream. Jane Doe did not return 50 cents in change from a dollar. Defendant grabbed Jane Doe's neck and kicked her in the buttocks. Her neck was sore for a couple of days. The physical abuse made Jane Doe afraid of defendant throughout her childhood. She knew never to cross him. Defendant stopped abusing her when she was 14 in 2004.

5

*Pretext Phone Call*

In 2014, Jane Doe, with the assistance of the Fontana police, conducted a pretext telephone call with defendant. Jane Doe asked defendant: "I want to know why you did it, you know you did all these sexual things for me, to me for over ten years . . . . Do you even care that it still bothers me and it makes things hard for me today?"

Defendant answered: "Yes it does bother me, it bothers me every single day of my life, it bothers me more than I can put in words.

Jane Doe responded: "I was like [14] when you stopped . . . . [¶] . . . [¶] It took you so long to stop though you did it for over ten years you know, I was like four or five years old when it started, like it took you ten years for you to feel so bad to stop?"

Defendant explained that he learned about sex when he was about four years old and his family did not recognize boundaries. Jane Doe persisted: "But that's not [¶] . . . [¶] [a]n excuse to molest me though, like you started when I was like four or five years old too . . . you weren't just trying to touch me down there you were trying to do things that you would do with an adult, you were trying to, you like [perform] oral on me, you made me do it to you almost tried to actually have sex with me once, like actually penetrate me and I was like that's something you do with an adult like why would you try and do that with like a five six year old girl? Did you ever feel bad when you started doing it or was it not until years later that [you] started regretting it?"

Defendant continued: "To be honest I used to regret it all the time I really did this and it was hard . . . there was a lot of stuff going in the family all the time I was growing up I mean a lot of different people in the family were doing different things and . . . . I

was raised by people who just kind of did whatever they wanted with whoever they wanted to . . . nobody ever told me that hey you don't do that you don't do this with family members you don't do this with this person or that person or you know I mean I never learned anything called boundaries."

Jane Doe again asked defendant if he was sorry about the sexual abuse: "Are you even [¶] . . . [¶] sorry for making me have sex with you?  Like are you truly sorry for all those times when I was five six seven eight years old . . . ?"**4**

Defendant apologized to Jane Doe: "[T]here's not a day that goes by that I'm not gravely sorry for what I've done, I mean I would give anything to go back and change things, I would give anything to go back and rewind it so I mean it never happened I mean I feel so bad I feel so bad . . . just knowing how bad I hurt you and messed you up I mean it, it affects me every day I mean it affects every part of my life . . . it just kills me I mean I feel so bad . . . I would do anything to take  your pain away to take your hurt away I mean I would do anything . . . [¶] . . . I put you in a bad position and I am truly sorry.  I'm truly sorry I would do anything to make it up for everything.

Finally, Jane Doe described how defendant's violent beatings made her scared to tell anyone about his sexual abuse:

"I had nobody to tell and you would beat the shit out of me anyways it's like you beat me until I couldn't sit down properly for three days . . . I was scared to death when I

---

**4**  At trial, Jane Doe explained that, when she said that defendant "had sex" with her, she meant any sexual fondling or contact that included his or her genitalia, and was not limited to intercourse.

7

was little who was I going to tell anything to . . . people used to ask me all [the] time does he hit you, does he hit you and I would say no 'cause I was scared to death of you . . . I was like fifteen years old thinking of killing you in [your sleep]. I was thinking of killing myself . . . I was scared to death of you I probably would have told somebody if you didn't just beat the crap out of me all the time . . . you would beat me to where I could not sit down properly for days because you beat me with your belt . . . you beat so much it's like you know who was I going to tell anything I was so scared of you . . . you mentally messed me up really bad. . . .

Defendant apologized again: "[A]ll I can say is I'm sorry . . . I have so many regrets I mean I wish I could have been that person that you deserve . . . I made a lot of mistakes and I know that all the mistakes that I made that I understand."

*The Police Interview*

Detective Coughlin interviewed defendant who admitted the material allegations of sexual abuse. Defendant admitted repeated acts of oral copulation and agreed with Jane Doe's account of defendant using lotion to facilitate rubbing her thighs with his penis. Defendant also admitted he had a problem with his temper and occasionally went "overboard." Defendant did not dispute having sexual contact with Jane Doe once a week or every other week. Defendant conceded an estimate of two hundred times "could be right."

*The Timeline of Abuse*

Jane Doe was interviewed by the police and provided a timeline of the abuse. Jane Doe said the initial bathroom incident occurred in a Chino apartment in 1994 or 1995.

8

An incident of oral copulation also occurred when Jane Doe was about four or five years old.

In 1995, defendant moved to Pomona and the sexual abuse continued weekly or biweekly. From 1996 through 1997, defendant lived in San Bernardino. From 1997 to 1999, defendant lived on Old Castle Road in Fontana. From 2000 to 2010, defendant lived in the Olive Grove Apartments in Fontana.

Jane Doe said defendant performed oral copulation on her when she was five years old, six years old, and seven years old.

*Defendant's Letter*

Jane Doe disclosed the abuse to her mother, Lucy, in 2011. In 2013, Lucy wrote defendant a letter accusing him of "sexually, physically and mentally abus[ing]" and "sexually attack[ing]" Jane Doe three or four times a month for over nine years. Defendant apologized and did not deny the accusation in his responsive letter. Defendant expressed that he wished he could "change the past" and that he "wouldn't hurt [Jane Doe] as much as he did," and prayed for forgiveness.

III

SUBSTANTIAL EVIDENCE OF FORCE, DURESS, MENACE, OR FEAR

Defendant contends there was insufficient evidence to establish that he committed his crimes by "force, violence, duress, menace or fear of immediate and unlawful bodily injury." But, reviewing the record in the light most favorable to the judgment, there was substantial evidence that defendant's physical abuse coerced Jane Doe into acquiescence.

9

A court reviews the record for substantial evidence. (*People v. Redmond* (1969) 71 Cal.2d 745, 755.) The court examines the entire record and draws all reasonable inferences in favor of the judgment to determine whether there is reasonable and credible evidence from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. (*People v. Jackson* (2014) 58 Cal.4th 724, 749.) Although circumstances might also reasonably be reconciled with a contrary finding, it does not warrant reversal of the judgment. (*Ibid.*) All intendments are in favor of the judgment and a verdict will not be set aside unless the record clearly shows that there is not sufficient evidence based upon any hypothesis whatsoever. (*Redmond,* at p. 755.) Defendant bears an "enormous burden." (*People v. Veale* (2008) 160 Cal.App.4th 40, 46.)

*Force—Count 1*

The jury had to find beyond a reasonable doubt defendant used "enough physical force to overcome the other person's will." (CALCRIM Nos. 1015 and 1045.) "Force" includes circumstances where the victim did not want to engage in the act and the evidence does not otherwise establish the victim's positive cooperation in act or attitude. (*People v. Young* (1987) 190 Cal.App.3d 248, 258.) It also includes the force used to accomplish "the penetration and the physical movement and positioning of [the victim's] body in accomplishing the act." (*Ibid.*)

In *Young*, the court concluded there was substantial evidence of forcible rape where a father sexually abused his six-year-old daughter while they lay in his bed. The defendant directed his daughter to get on the bed, under the covers, and lie down. The

10

defendant put his arms around her, placed her on top of him, pulled her pants down, and put his finger in her vagina. The defendant made her slide down to his groin and put his penis in the victim's vagina. (*People v. Young, supra,* 190 Cal.App.3d at pp. 252, 258.) The court held that the force used to accomplish that penetration and the physical movement and positioning of the victim was substantial evidence of force. (*Id.* at p. 258.)

Count 1 charged defendant with committing sexual penetration. The court instructed the jury to find defendant guilty of sexual penetration by force. The evidence was sufficient to support the jury's determination that defendant used force to accomplish forcible sexual penetration as alleged in count 1. Defendant grabbed Jane Doe, who was four or five years old, by the hand, and took her to the bathroom when they were alone. Defendant lifted Jane Doe up on the sink, positioned her to face the mirror, and massaged her genitals with his hand before penetrating the vagina.

Jane Doe testified she was scared. A reasonable jury could find that the sexual penetration was committed against Jane Doe's will and that defendant used sufficient force to overcome her will by leading her by the hand into the bathroom, positioning her body on the sink before digitally penetrating her. (*In re Asencio* (2008) 166 Cal.App.4th 1195, 1205-1206; *People v. Young, supra*, 190 Cal.App.3d at p. 258.)

*Duress, Menace, Fear—All Counts*

The court instructed the jury on each offense that to find defendant guilty by duress, it had to find beyond a reasonable doubt "a direct or implied threat of force, violence, danger, hardship, or retribution that causes a reasonable person to do something

11

that he or she would not otherwise do or submit to. When deciding whether the act was accomplished by duress, consider all the circumstances, *including the age of the other person and her relationship to the defendant.*" (CALCRIM Nos. 1015 and 1045.)

The totality of the circumstances include the victim's age, her relationship to the perpetrator, threats to harm the victim, physically controlling the victim when the victim attempts to resist, warnings to the victim that revealing the molestation would result in jeopardizing the family, and the relative physical vulnerability of the child. (*People v. Cochran* (2002) 103 Cal.App.4th 8, 13-14; *People v. Superior Court* (*Kneip*) (1990) 219 Cal.App.3d 235, 238.) The fact that the victim testifies the defendant did not use force or threats does not preclude a finding of duress. (*People v. Cochran, supra*, 103 Cal.App.4th at p. 14.) When the victim is young and is molested by her father in the family home, duress will be present in all but the rarest cases. (See *People v. Veale, supra*, 160 Cal.App.4th at p. 49 [seven-year-old victim], citing *Cochran,* at p. 16, fn. 6 [nine-year-old victim].)

Here the victim was between four and 14 years old and defendant is her father. The incidents occurred when they were alone at home. The evidence demonstrates a vulnerable, isolated child who was compelled to participate in sex acts in response to parental authority and violent intimidation and not the result of freely given consent. Because of Jane Doe's young age at the time of the abuse and defendant's position of authority, she was particularly susceptible to being coerced. (*People v. Cochran, supra*,103 Cal.App.4th at pp. 15-16; *People v. Veale, supra*, 160 Cal.App.4th at pp. 49-50.) Although Jane Doe did not expressly resist her father, defendant's ongoing violent

12

conduct terrified Jane Doe. The jury could reasonably have found that his continual beatings constituted an implied threat of violence or danger if she did not submit to his sexual abuse.

Defendant relies on *People v. Espinoza* (2002) 95 Cal.App.4th 1287 for the proposition that there was insufficient evidence of duress but that case is distinguishable. The *Espinoza* victim was 12 years old (*id.* at p. 1292), some years older than Jane Doe was when the abuse began. (See *People v. Veale, supra*, 160 Cal.App.4th at p. 49 [distinguishing *Espinoza* because the victim was "considerably older" than the six- or seven-year-old *Veale* victim].) Second, in *Espinoza* the only proffered basis for the victim's fear was that the defendant continued to molest her. (*Espinoza,* at p. 132.) Here, the jury had evidence of physical abuse because defendant regularly beat Jane Doe.

Defendant also argues that defendant never expressly threatened Jane Doe with physical abuse or with other consequences like the breakup of the family. But in reviewing the sufficiency of evidence, a court "err[s] in focusing on evidence that did not exist rather than on the evidence that did exist." (*People v. Story* (2009) 45 Cal.4th 1282, 1299, citing *People v. Rodriguez* (1999) 20 Cal.4th 1, 12.) The question is not whether the jury reasonably could have reached a different conclusion. Instead, it is whether any reasonable trier of fact could have reached the same conclusion as the jury.

For the same reasons, the jury could find defendant guilty by menace, "a threat, statement, or act showing an intent to injure someone." (CALCRIM Nos. 1015 and 1045.) "An express or implied threat of harm does not require the use of a deadly weapon or an express verbal threat to do additional harm. Threats can be exhibited in a

13

myriad number of ways, verbally and by conduct." (*People v. Aispuro* (2007) 157 Cal.App.4th 1509, 1513.)  Even if defendant never expressly threatened Jane Doe, the jury was entitled to consider the totality of the evidence in assessing menace and had substantial evidence to conclude there was an implied threat that defendant would hurt Jane Doe if she resisted.

The same reasons also allowed the jury to find defendant guilty for acts accomplished by fear.  (CALCRIM Nos. 1015 and 1045.)  Fear may be inferred from the circumstances despite contrary testimony from the victim.  (*People v. Iniguez* (1994) 7 Cal.4th 847, 857.)  Threats may be inferred from conduct and even by silence.  (*People v. Reyes* (1984) 153 Cal.App.3d 803, 811.)  A child's fear is magnified if the abuser is the victim's father.  (See *id.* at p. 810 [stepfather].)  Throughout her childhood, Jane Doe was "scared to death" of her father and knew never to cross him.  Under the plain language of section 288a, the act creating the victim's fear need not occur immediately before or during the sexual abuse; rather, the statute only requires that the victim fear immediate and unlawful bodily injury.  The jury could have reasonably found the continual beatings created an ongoing climate of fear.

The jurors could reasonably conclude that defendant's directives to Jane Doe were orders to be obeyed.  (See *People v. Reyes, supra,* 153 Cal.App.3d at p. 811 [holding that substantial evidence of fear existed when defendant "took" victim's clothes off and "told" her to touch his genitals and anus and to masturbate him].)  Likewise, the jury could have found that oral copulation was committed by fear, as charged in counts 7, 8, or 9, based on defendant demanding Jane Doe perform oral sex on him.

Finally, the two incidents of sexual penetration, which occurred while Jane Doe was sleeping, satisfy count 6. These two incidents of "[s]udden, unconsented-to groping, disrobing, and ensuing sexual" abuse of a sleeping victim "would reasonably cause one to react with fear." (*People v. Iniguez, supra*, 7 Cal.4th at p. 858.) Thus, substantial evidence supported all defendant's convictions for aggravated sexual crimes.

IV

INEFFECTIVE ASSISTANCE OF COUNSEL

When Detective Tomicic testified that Jane Doe told him defendant orally copulated her when she was between five and seven years old, defense counsel did not object on grounds of hearsay. Defendant asserts this was ineffective assistance of counsel. However, other evidence established oral copulation occurred when Jane Doe was five to seven years old. The claim for ineffective assistance fails.

""""In order to establish a claim of ineffective assistance of counsel, defendant bears the burden of demonstrating, first, that counsel's performance was deficient because it 'fell below an objective standard of reasonableness [¶] . . . under prevailing professional norms.' [Citations.] Unless a defendant establishes the contrary, we shall presume that 'counsel's performance fell within the wide range of professional competence and that counsel's actions and inactions can be explained as a matter of sound trial strategy.' [Citation.] . . . If a defendant meets the burden of establishing that counsel's performance was deficient, [second] he or she also must show that counsel's deficiencies resulted in prejudice, that is, a 'reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'

15

[Citation.]'" [Citation.]" (*People v. Salcido* (2008) 44 Cal.4th 93, 170; *Strickland v. Washington* (1984) 466 U.S. 668, 687.)

Generally, claims for ineffective assistance of counsel are more appropriately litigated on habeas corpus because the reasons for defense counsel's actions or omissions can be explored. (*People v. Salcido, supra*, 44 Cal.4th at p. 152.) Courts have repeatedly stressed "'that "[if] the record on appeal sheds no light on why counsel acted or failed to act in the manner challenged[,] . . . unless counsel was asked for an explanation and failed to provide one, or unless there simply could be no satisfactory explanation," the claim on appeal must be rejected.'" (*People v. Mendoza Tello* (1997) 15 Cal.4th 264, 266-267.) The record does not explain why defendant's trial counsel failed to object except that an objection would have lacked merit.

Evidence Code section 1235 codifies the hearsay exception for a witness's prior inconsistent statement: "Evidence of a statement made by a witness is not made inadmissible by the hearsay rule if the statement is inconsistent with his testimony at the hearing and is offered in compliance with Section 770." Because Jane Doe could not remember her prior statements, Detective Tomicic's testimony recounting Jane Doe's statements to him that defendant orally copulated her when she was five, six, and seven years old was sufficiently inconsistent in effect to qualify as a prior inconsistent statement. (*People v. Fierro* (1991) 1 Cal.4th 173, 221-222.)

"'Generally it is true that the testimony of a witness indicating that he or she does not remember an event is not inconsistent with a prior statement describing the event. [Citation.] "But justice will not be promoted by a ritualistic invocation of this rule of

16

evidence. Inconsistency in effect, rather than contradiction in express terms, is the test for admitting a witness'[s] prior statement [citation], and the same principle governs the case of the forgetful witness."'" (See *People v. Hovarter* (2008) 44 Cal.4th 983, 1008-1009 [holding that detective's testimony recounting a sexual assault victim's prior statement that the defendant told the victim "this was not the first time that he had done this" satisfied the hearsay exception when at trial victim did not "remember" if the defendant "said specifically that he had done it before."].)

*People v. Sam* (1969) 71 Cal.2d 194, which defendant cites to support his hearsay argument, "'stands for no more than the proposition that "prior statements are not admissible to impeach a witness whose answers to questions are *exclusively* of the 'I-don't-remember' variety."'" (*People v. Fierro, supra,* 1 Cal.4th at p. 222, original italics.) Jane Doe's testimony that she did not recall defendant orally copulating her when she was younger than eight was inconsistent "in effect" with the earlier dates of oral copulation that she previously told Detective Tomicic. It was reasonable for defense counsel not to object because the meritless objection would have been properly overruled. (*People v. Ochoa* (1998) 19 Cal.4th 353, 463; *People v. Anderson* (2001) 25 Cal.4th 543, 587 ["Counsel is not required to proffer futile objections."].)

Finally, defendant cannot demonstrate prejudice as a result of ineffective assistance. Defendant's own statements to Jane Doe and police detectives established that the oral copulation happened when Jane Doe was between five and seven years old. It is not reasonably likely the result would have been different for two reasons: first, a hearsay objection would have been overruled as a prior inconsistent statement; second,

17

there was other evidence of the oral copulation occurring when Jane Doe was five to seven years old. Defendant admitted that he orally copulated Jane Doe when she was between five and seven years old. He could not even keep track of how many hundreds of time he orally copulated Jane Doe. During the pretext call with Jane Doe, he apologized for orally copulating her for 10 years beginning when she was four or five years old.

Based on the overwhelming evidence of the dates of defendant's oral copulation, independent of Jane Doe's interview with Detective Tomicic, defendant cannot show a reasonable probability that, but for his counsel's alleged conduct, the result of the proceeding would have been different. (*People v. Salcido, supra*, 44 Cal.4th at p. 170.)

V

DISPOSITION

We find substantial evidence defendant committed his crimes by means of force, fear, menace, or duress. We hold there was not ineffective assistance of counsel. We affirm the judgment.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

CODRINGTON
J.

We concur:

MILLER
Acting P. J.

SLOUGH
J.

18

Filed 9/29/17

**CERTIFIED FOR PUBLICATION**

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

| | |
|---|---|
| The PEOPLE, | |
| Plaintiff and Respondent, | E065260 |
| v. | (Super.Ct.No. FWV1404841) |
| EDWARD LEWIS THOMAS, | ORDER CERTIFYING OPINION FOR PUBLICATION |
| Defendant and Appellant. | |

A request having been made to this court pursuant to California Rules of Court, rule 8.1120(a), for publication of a nonpublished opinion heretofore filed in the above matter on September 11, 2017, and it appearing that the opinion meets the standard for publication as specified in California Rules of Court, rule 8.1105(c),

IT IS ORDERED that said opinion be certified for publication pursuant to California Rules of Court, rule 8.1105(c).

CODRINGTON
J.

MILLER
Acting P. J.

SLOUGH
J.

19