[No. F045561. Fifth Dist. July 19, 2005.]

In re JOSE P., a Person Coming Under the Juvenile Court Law.
THE PEOPLE, Plaintiff and Respondent, v.
JOSE P., Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION†]**

---

†Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts 3–6.

[REDACTED]

**COUNSEL**

Rebecca P. Jones, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Mary Jo Graves, Assistant Attorney General, Carlos A. Martinez and Catherine G. Tennant, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**DAWSON, J.**—Following a contested jurisdictional hearing, the juvenile court sustained allegations of forcible rape (Pen. Code, § 261, subd. (a)(2))[1] and unlawful sexual intercourse (§ 261.5) against Jose P. (appellant), and committed him to the California Youth Authority (CYA) for a period not to exceed nine years.

Appellant contends the juvenile court erred in sustaining the forcible rape allegation. He further contends the juvenile court made various dispositional errors. We will remand for a new dispositional determination, but affirm the finding of forcible rape.

### FACTS

Yvonne G. was 15 years old, and appellant 16, when she went to his house to "scam and jam"—which means to kiss and leave. She went there with her friend, appellant's cousin Susie, and Susie's boyfriend Daniel. Yvonne had seen appellant at a fair two years before and, recently, had spoken to him on the phone, but did not really know him.

---

[1] All further statutory references are to the Penal Code unless otherwise stated.

It was around 8:00 p.m. when the group arrived. Appellant's mother was not home, but the husband of another of appellant's cousins was there. The two couples—Yvonne and appellant, and Susie and Daniel—smoked marijuana in appellant's room. Appellant turned out the lights, and the couples kissed.

After some 30 minutes, appellant and Yvonne moved to a different room. Appellant, who was bigger than Yvonne,[2] lifted her, set her down on the bed, removed her clothes, and lay on top of her. Yvonne did not object. She and appellant kissed, but when appellant started to put his penis into her vagina, Yvonne said, "Jose, no. I don't want to do this." Appellant stopped.

The two continued their encounter, with appellant kissing Yvonne's chest. Yvonne said at the hearing that this continued for six minutes. Appellant then again began to attempt penetration, and Yvonne again said, "No, I don't want to do this." She said, "It hurts"; he said, "It will feel better." He penetrated her "a little bit," which was painful to her and caused her eyes to water. He did stop, though, when she told him to.

The two then talked, though appellant remained on top of Yvonne. They spoke about the time she saw him at the fair. After about five minutes, appellant tried again to achieve penetration. Yvonne told him to stop, but he continued until he "put it all the way in, just once" and, only then, did he stop. Yvonne did not pull away from appellant, because she could not. He was on top of her.

Yvonne got up and put on her bra and panties. Appellant, sitting on the bed, pulled her toward him and positioned her so that her legs straddled his. He kissed her and laid her back on the bed. She did not try to stop him because she was "scared" and "didn't know what to do." While holding her down by her shoulders, appellant rubbed his penis on her vagina over her underwear and "push[ed] himself on" her. She told him to stop and that it hurt, but he continued for "[t]wo or three minutes." He then put his fingers underneath her panties and tried to insert a finger into her vagina. Yvonne told him to stop, and she moved his hand away. When asked whether appellant had penetrated her vagina with his finger or "just rubbed it on top," Yvonne testified "I'm pretty sure. I really couldn't feel nothing. I was hurting down there. I really couldn't feel anything." The two then dressed.

Yvonne and Susie left by 10:00 p.m. Yvonne's shoulders, vagina and stomach hurt, and she had trouble walking. Yvonne told Susie appellant had

---

[2] At the time of disposition, appellant was five feet eight inches tall and weighed 190 pounds. Yvonne weighed 90 pounds.

tried to force himself inside her and that it had hurt. Yvonne was crying from pain and could not lie down.

Yvonne did not tell her parents about the incident until two days later. Her mother took her to the hospital because she complained about shoulder and stomach pain. At the hospital, she disclosed what had occurred.

On both direct and cross-examination, Yvonne acknowledged that appellant had never threatened her or attempted to stop her from leaving the room. She also admitted that someone had opened the door while she was on the bed with appellant, but she had not asked for help. She explained that she had been too "scared. I was embarrassed. I didn't know what to do."

*Defense*

Appellant testified that he met Yvonne two weeks before the incident and had spoken to her on the phone about "hooking up," which he interpreted to mean having sex. Appellant thought Yvonne had come to his house for that purpose.

When Yvonne, Susie and Daniel arrived at appellant's, Yvonne pulled out a marijuana joint which all four of them shared. Yvonne and appellant started kissing and then went into a room together where Yvonne took off her clothes. The two had intercourse for 10 or 15 minutes. When Yvonne told appellant to stop, because it was hurting her, he stopped and told her to put her clothes on. Up to that point, Yvonne had done nothing to resist him.

When appellant stopped, Yvonne put on her panties and straddled appellant on the bed. She pushed appellant back and started rubbing her vagina on his penis. Appellant told Yvonne to stop, because she was teasing him and because his mother was coming home.

Susie testified that she and Yvonne had been friends for years. Susie thought appellant and Yvonne had been in a room by themselves from about 8:20 p.m. until just before 10:00 p.m. that night. Yvonne had looked happy when she came out of the room with appellant, and was hugging and kissing him. When the two girls left the house, Susie noticed that Yvonne had a big hickey on her neck. Yvonne later began crying and told Susie appellant's penis had hurt her, because it was "really large."

**DISCUSSION**

1. *The charged offenses*

Appellant was charged with forcible rape and unlawful sexual intercourse (§§ 261, subd. (a)(2), & 261.5), based on the same act, and also with felony

sexual battery (§ 243.4, subd. (a)) and forcible sexual penetration (§ 289, subd. (a)(1)). The prosecutor argued the sexual battery occurred after the rape, when appellant rubbed his penis on Yvonne's vagina through her panties. The prosecutor conceded that the fourth charge, relating to digital penetration, had not been proved. The trial court found not true both the digital penetration and the sexual battery,[3] but sustained the charges of forcible rape and unlawful sexual intercourse.

*2. Forcible rape*

Appellant contends there is no substantial evidence to support his conviction of forcible rape because there is no evidence of the use of force. We will affirm.

In considering appellant's claim of insufficiency of the evidence, we must determine only whether, on the record as a whole, any rational trier of fact could have found him guilty beyond a reasonable doubt. (*People v. Barnes* (1986) 42 Cal.3d 284, 303 [228 Cal.Rptr. 228, 721 P.2d 110]; *People v. Johnson* (1980) 26 Cal.3d 557, 576–578 [162 Cal.Rptr. 431, 606 P.2d 738].) We view the evidence in the light most favorable to the prosecution, and presume in support of the judgment the existence of every fact the trier of fact could reasonably deduce from the evidence. (*People v. Ochoa* (1993) 6 Cal.4th 1199, 1206 [26 Cal.Rptr.2d 23, 864 P.2d 103].) We affirm if the circumstances reasonably justify the trier of fact's findings even if they might also be reconciled with a contrary finding. (*People v. Perez* (1992) 2 Cal.4th 1117, 1124 [9 Cal.Rptr.2d 577, 831 P.2d 1159].)

In *People v. Griffin* (2004) 33 Cal.4th 1015 [16 Cal.Rptr.3d 891, 94 P.3d 1089] (*Griffin*), the Supreme Court addressed the question whether "force" for purposes of our forcible rape statute must be shown to be ' "*substantially* different from or *substantially* greater than' the physical force normally inherent in an act of consensual sexual intercourse." (*Id.* at p. 1023, quoting *People v. Cicero* (1984) 157 Cal.App.3d 465, 474 [204 Cal.Rptr. 582], italics added in *Griffin*.) The court rejected the need for such proof: "To the contrary, it has long been recognized that 'in order to establish force within the meaning of section 261, [former] subdivision (2), the prosecution need only show the defendant used physical force of a degree sufficient to support a finding that the act of sexual intercourse was against the will of the [victim].' " (*Griffin, supra,* at pp. 1023–1024, quoting *People v. Young* (1987) 190 Cal.App.3d 248, 257–258 [235 Cal.Rptr. 361].) Thus, according to *Griffin,* the force requirement for purposes of section 261, subdivision (a)(2)

---

[3] Pursuant to section 243.4, subdivision (f), " 'touches' means physical contact with the skin of another person whether accomplished directly or through the clothing of the person committing the offense."

has no special meaning outside the commonly understood definition of "force." Though the statute does require proof of both force (or one of the other statutory aggravators)[4] and lack of consent, force " 'plays merely a supporting evidentiary role, as necessary only to insure an act of intercourse has been undertaken against a victim's will.' " (*Griffin, supra,* at p. 1025, quoting *Cicero, supra,* 157 Cal.App.3d at p. 475.) Thus, "even conduct which might normally attend sexual intercourse, when engaged in with force sufficient to overcome the victim's will, can support a forcible rape conviction." (*Griffin,* at p. 1027.)

In *Griffin,* the force consisted of the adult defendant pinning the minor victim's arms to the floor as he penetrated her vagina with his penis. The court found this was sufficient to show the defendant "used force . . . to accomplish intercourse against [the victim's] will" (*Griffin, supra,* 33 Cal.4th at p. 1029), and thus to support his conviction of forcible rape.

The evidence of force in *Griffin* was similar to that found sufficient in *In re John Z.* (2003) 29 Cal.4th 756, 763 [128 Cal.Rptr.2d 783, 60 P.3d 183]—to wit, grabbing the victim's waist, pulling her back down, and rolling her over to facilitate the continuation[5] of sexual intercourse. (*Griffin, supra,* 33 Cal.4th at p. 1028.) As noted in *Griffin,* that conduct would have been sufficient under any standard.

Appellant contends the evidence in *Griffin* and *John Z.* is different from the evidence here, because here there is nothing to show the exertion of any force other than that inherently involved in the act of penetration itself. We agree that this case is different from both *Griffin* and *John Z.* There is evidence that appellant did at one point hold Yvonne down, by placing his hands on her shoulders, but the record shows this happened in connection not with the rape but, instead, the subsequent through-the-clothes rubbing that occurred. In connection with the rape, we know only that appellant, who was twice her size, was on top of Yvonne when he penetrated her. While Yvonne did testify that she could not "pull away" because appellant was on top of her, there is no evidence that appellant used his weight as a means to achieve his end. We believe, nonetheless, that in the circumstances of this case, the force inherently involved in the penetration itself was sufficient.

---

[4] While the formal charge here was rape by force or fear of immediate and unlawful bodily injury, the prosecutor proceeded only on the theory of force. He conceded that any fear Yvonne felt was "just based on her simple inexperience we believe." Neither does the Attorney General here argue violation of section 261, subdivision (a)(2) on any theory other than force.

[5] *John Z.* resolved in the affirmative the question "whether the crime of forcible rape . . . is committed if the female victim consents to an initial penetration by her male companion, and then withdraws her consent during an act of intercourse, but the male continues against her will." (*In re John Z., supra,* 29 Cal.4th at pp. 757–758.)

In *Griffin*, the court cited with approval as to proof of force this court's opinion in *People v. Young*. (*Griffin, supra,* 33 Cal.4th at p. 1024.) There, we reversed because the evidence was insufficient to show that the rape was accomplished by means of fear of immediate and unlawful bodily injury. We noted there was, however, substantial evidence to show rape "by means of force and against [the victim's] will." (*People v. Young, supra,* 190 Cal.App.3d at p. 258.) The minor victim had testified that the adult defendant called her into his room, onto his bed, and under the bedcovers with him. He put his arms around her, sat her on top of him, pulled down her pants, and digitally penetrated her vagina. He made her "scoot down" and then put his penis into her vagina. We found it sufficient for purposes of section 261, former subdivision (2) (now subd. (a)(2)) that "some force was used by defendant in both the penetration and the physical movement and positioning of [the victim's] body in accomplishing the act." (*Young,* at p. 258.)

Respondent cites another opinion of this court—*People v. Jeff* (1988) 204 Cal.App.3d 309 [251 Cal.Rptr. 135]. There the minor victim testified the adult defendant told to her to lie down. He then "got on top of her, put his penis in her vagina and moved it up and down. [She] said it hurt when defendant inserted his penis." (*Id.* at p. 317.) The question whether this evidence was sufficient to show rape by force was not presented, because the case had gone to the jury only on the theory of rape by fear of immediate and unlawful bodily injury. We noted, however, that the evidence supported a finding that the rape had been against the victim's will because "some force was used by defendant in the penetration and physical movement involved and, at least in the beginning, it was painful for her." (*Id.* at p. 328.)

█ The circumstances in this case are as follows. There can be no doubt that Yvonne voluntarily and actively engaged in sexual foreplay with appellant, and that she continued to do so after he twice attempted penetration and was rebuffed. We know from the opinion in *John Z.*, however, that Yvonne's active participation in the encounter does not exclude her from the protection of our forcible rape statute. Though she did participate in the encounter, Yvonne made it clear to appellant, repeatedly and prior to penetration, both that she did not want to be penetrated and that appellant's efforts were both against her will and physically painful to her. Appellant, nonetheless, forced his penis into her vagina. Yvonne was left with pain in her vagina and stomach, and with difficulty walking.

We do not hold that, in all cases, the force inherent in the act of penetration is sufficient to show forcible rape; indeed, we think that as a general matter it is not. (See *Griffin, supra,* 33 Cal.4th at p. 1025 [noting conformity between law of rape and law of robbery]; *People v. Wright* (1996) 52 Cal.App.4th 203, 210 [59 Cal.Rptr.2d 316] [force for purposes of robbery must be something

more than "that which is needed merely to take the property from the person of the victim"].) What we do hold is that there is substantial evidence in this case to show that, against the victim's will, appellant forced his penis inside her vagina and thus committed a violation of section 261, subdivision (a)(2).[6]

3.–6.[*]

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## DISPOSITION

The matter is remanded to the juvenile court to set a maximum term of physical confinement in CYA based on the facts and circumstances that brought appellant before it. In addition, the court is directed to stay the commitment imposed for count 2, unlawful sexual intercourse. In all other respects, the judgment is affirmed.

Harris, Acting P. J., and Wiseman, J., concurred.

Appellant's petition for review by the Supreme Court was denied November 2, 2005. Werdegar, J., was of the opinion that the petition should be granted.

---

[6] We recognize that *Griffin* and *John Z.*, and now this case, give section 261, subdivision (a)(2) a potentially broad application—to conduct that may, as a matter of policy, merit different treatment than other, more egregious forms of forcible rape. Forcible rape is considered a serious and a violent felony for purposes of sections 1192.7, subdivision (c)(3), and 667.5, subdivision (c)(3). Thus, it may not be enough to say that the difference in rapes can be addressed in the selection of term from the applicable sentencing triad. (See § 264.) It is for the Legislature and not us, however, to examine such questions of policy.

[*] See footnote, *ante*, page 110.