Filed 1/24/14  In re Lincoln A. CA2/1

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| In re LINCOLN A., a Person Coming Under the Juvenile Court Law. | B245096 (Los Angeles County Super. Ct. No. FJ48336) |
| THE PEOPLE, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> LINCOLN A., <br><br> Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Robert J. Totten, Juvenile Court Referee.  Affirmed as modified.

Laini Millar Melnick, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Steven D. Matthews, Supervising Deputy Attorney General, and Analee J. Brodie, Deputy Attorney General, for Plaintiff and Respondent.

_____

A juvenile against whom a Welfare and Institutions Code section 602 petition (petition) alleging forcible rape was sustained, contends the juvenile court committed reversible error by excluding evidence of the victim's mental health history, which he contends was relevant to the victim's credibility, a pivotal issue at the adjudication. The juvenile also asserts that there is insufficient evidence to sustain the petition, that the court erroneously informed him he had committed a strike offense, and that it erred in setting a maximum term of confinement. We will remand with an order to modify the order of wardship to strike the maximum term of confinement and, in all other respects, affirm.

## PROCEDURAL BACKGROUND

The petition alleged that appellant, Lincoln A., committed rape. (Pen. Code, § 261, subd. (a).) The juvenile court sustained the petition, declared appellant a ward of the court and ordered him placed home on probation. The court declared the offense to be a felony, calculated the maximum term of confinement as 11 years and awarded appellant predisposition credit of 383 days.

## FACTUAL BACKGROUND

On January 22, 2011, at about 3:00 p.m., 17-year-old B.N. argued with her mother as she and her parents drove to B.N.'s grandmother's house. B.N. was angry and, when the car reached a stoplight near Crenshaw Boulevard, got out and began walking. B.N. was not readily familiar with the neighborhood, having only driven through it in the past. Unable to persuade B.N. to get back in the car, her parents drove away. B.N.'s father was not overly concerned for his daughter's safety; it was the middle of the day.

Appellant, whom B.N. did not know, approached B.N. on a bicycle and began talking to her. She asked him for a cigarette, which they shared. They walked together until appellant said he wanted to meet a friend behind an apartment building. B.N. continued walking with appellant behind the building, making small talk and smoking. She was unconcerned for her safety because, in her neighborhood, "nobody is like that, nobody is dirty."

At some point, B.N. received a cell phone call from her boyfriend. He told her she was not in a safe area. The boyfriend also spoke with appellant, with whom the boyfriend exchanged profanities and who the boyfriend said "disrespected" him. Appellant handed B.N. her phone.

As B.N. began to leave, appellant asked for a "hug." B.N. hugged appellant, who grabbed her tightly and told her he wanted a "kiss." Appellant picked B.N. up, placed her on the hood of a car, held her down, spread her legs and pulled off her pants. B.N. yelled as loud as she could, told appellant to stop and tried to resist. But appellant was stronger than she was and he told her he had a knife in his pocket. B.N. did not see a knife, but did see something in appellant's pocket. She stopped struggling because she realized appellant was too strong and because it was not "worth dying for." Appellant unzipped his pants and engaged in vaginal intercourse with B.N. He did not wear a condom. B.N. felt appellant ejaculate on her inner thigh. B.N. testified that appellant would have known the sex was not consensual because she had, at first, physically struggled against him and had said "no." B.N. acknowledged that the written statement she gave to the police did not mention a knife, but testified that appellant "did, in fact, threaten [her] with a knife." B.N. told the police after the incident that, if a video had been taken of the incident, it might have appeared to have been a consensual sexual encounter; it was not.

Afterward, B.N. ran across the street, where a woman allowed her to use her phone to call her father. B.N. told her father she had been raped. When her father picked B.N. up she was "hysterical" and "really distraught." He called the police and B.N. was taken to a rape treatment center, where she was examined and swabs were taken. Counsel for both sides stipulated that no sperm or male DNA was found on the vaginal swab, and that appellant's DNA was found on a swab of B.N.'s neck.

**DISCUSSION**

1. *Exclusion of evidence of victim's mental health status*

On cross-examination, defense counsel asked B.N., "Is it true that you suffer from bipolar disorder?" The prosecution objected to the question on relevance, to which defense counsel responded that the question "goes to credibility" and "explains the

3

behavior."[1]  The court sustained the objection.  Appellant maintains his objective in seeking to introduce this evidence was its bearing on B.N.'s credibility, a pivotal issue at trial.  He maintains the court erred in excluding the evidence of B.N.'s mental health diagnosis as irrelevant.

The Attorney General argues that appellant forfeited this claim by failing to make an offer of proof below.  Typically, to preserve an evidentiary point for review, the proponent of the evidence must make an offer of proof regarding the anticipated testimony informing the trial court of the purpose and relevance of the excluded evidence.  (Evid. Code, § 354, subd. (a); *People v. Guerra* (2006) 37 Cal.4th 1067, 1144, disapproved on other grounds in *People v. Rundle* (2008) 43 Cal.4th 76, 151.)  Failure to make an adequate offer of proof bars consideration of the alleged error on appeal.  (*People v. Eid* (1994) 31 Cal.App.4th 114, 126.)

But the Attorney General ignores an equally well-established principle.  No offer of proof is required to challenge on appeal a ruling sustaining an objection where, as here, "[t]he evidence was sought by questions asked during cross-examination . . . ."  (Evid. Code, § 354, subd. (c); *People v. Coleman* (1970) 8 Cal.App.3d 722, 729.)  The underlying rationale for this principle, established long before Evidence Code section 354's enactment, is that "[q]uestions on cross-examination . . . are largely exploratory, and it is unreasonable to require an offer of proof since counsel often cannot know what pertinent facts may be elicited.  [Citation.]  Hence no offer of proof is necessary in order to obtain a review of rulings on cross-examination."  (*Tossman v. Newman* (1951) 37 Cal.2d 522, 525 (*Tossman*); *Nienhouse v. Superior Court* (1996) 42 Cal.App.4th 83, 93.)

Appellant's claim, however, fails on the merits.  Only relevant evidence is admissible.  (Evid. Code, §§ 350, 351.)  Evidence is relevant if it tends "to prove or disprove any disputed fact that is of consequence to the determination of the action."

---

[1] Before trial, appellant's counsel sought discovery of Brittini N.'s mental health records from a local hospital.  The court ordered the records produced.

4

(Evid. Code, § 210.) "The trial court has broad discretion in determining the relevance of evidence, but lacks discretion to admit irrelevant evidence. [Citation.] We review for abuse of discretion a trial court's rulings on the admissibility of evidence. [Citations.]" (*People v. Benavides* (2005) 35 Cal.4th 69, 90.) Under that standard, the court's ruling will not be disturbed "'"unless it exercised its discretion in an arbitrary, capricious, or patently absurd manner that resulted in a manifest miscarriage of justice."'" (*People v. Jones* (2013) 57 Cal.4th 899, 924.)

In a pretrial motion, appellant stated that B.N.'s mental health records were relevant to her credibility, in that "[s]ymptoms of teenage bipolar disorder include poor judgment, increased risk-taking behavior, hypersexuality, delusions and hallucinations." On appeal, he insists those symptoms are "undeniably relevant" to the credibility of B.N.'s claim that appellant forced her to have sexual intercourse, "particularly since her symptoms were severe enough twice to require involuntary hospitalization."

"[T]he mental illness or emotional instability of a witness can be relevant on the issue of credibility, and a witness may be cross-examined on that subject, if such illness affects the witness's ability to perceive, recall or describe the events in question. [Citations.]" (*People v. Gurule* (2002) 28 Cal.4th 557, 591–592.) This principle is sound, but it has no application here. Appellant's theory of relevance fails to demonstrate any connection between B.N.'s mental health history and an inclination to lie, let alone her capacity to perceive, recollect or describe the crime in issue. After the prosecution's objection was sustained, appellant made no attempt to inquire whether B.N. had been treated for issues related to her inability to perceive, recollect or communicate, the specific areas that could give rise to reasons to further explore her mental health history.

B.N., the victim who reported her rape to the police, provided coherent trial testimony on the specifics of the crime and events that transpired. The trial court specifically found her to be a "completely credible" witness. Appellant points to no evidence to indicate that a symptom or result of the fact that B.N. has or had a bipolar disorder diagnosis is a lack of credibility. The only evidence in the record related to any symptoms of B.N.'s illness is that, several years before the rape occurred, she was

5

involuntarily hospitalized for unknown reasons and that, about six months after the rape, she was inclined to "[do] things without thinking" and "[got] angry."

A person's credibility is not in question merely because she is receiving or has received treatment for a mental health problem. Nor does the fact that B.N. was a rape victim necessarily mean her mental health status becomes fair game at trial. An individual does not place his or her mental health at issue, or lose his or her right to privacy, by raising criminal sexual assault charges against a party. (*Susan S. v. Israels* (1997) 55 Cal.App.4th 1290, 1297.) Although a witness's credibility is always at issue, "this does not mean the defense is entitled to rummage through the medical records of every witness in a criminal prosecution looking for evidence to impeach the witness's credibility." (*Ibid.*) "Moreover, there is nothing 'inevitable' about the discovery of a rape victim's mental health records. Such discovery requires a careful balancing of the defendant's Sixth Amendment right to cross-examination and the complaining witness's right of privacy. [Citation.] This balance does not invariably tip in the defendant's favor. [Citations.]" (*Ibid.*) Appellant's bold attempt to use evidence that B.N. may have a tendency to engage in impulsive behavior or may lack well-developed anger management skills, and extrapolate from that to conclude she is therefore inclined to lie is premised on the sheer gossamer of speculation and conjecture.

The entirety of the hearing testimony presented the juvenile court with a credibility conflict between appellant and B.N. The court, as the factfinder, was able to assess B.N.'s capacity "ability to perceive, recall or describe the events" about which she testified. (*People v. Gurule*, *supra*, 28 Cal.4th at p. 592.) The court clearly considered these issues and found B.N. competent to testify and deemed her account credible. It is difficult to conceive how a different result might have been reached had appellant been permitted to explore B.N.'s mental health history.

Even if the trial court erred, the error was harmless under the standard of prejudice set forth in *People v. Watson* (1956) 46 Cal.2d 818, 836. Under that standard, reversal is required, "if, taking into account the entire record, it appears '"reasonably probable"' the

6

defendant would have obtained a more favorable outcome had the error not occurred." (*People v. Ledesma* (2006) 39 Cal.4th 641, 716.)

On this record, for the reasons discussed above, there is no reasonable chance a result more favorable to appellant would have been reached if the court had considered the excluded evidence and any bearing it may have had on B.N.'s credibility. B.N.'s testimony was clear, and she was not equivocal. The adjudication centered on the issue of credibility, and B.N. was cross-examined. The court had ample opportunity to assess B.N.'s testimony; it found her "completely credible."

Under California law, unless the testimony is physically impossible or inherently improbable, conviction of a sex offense may be sustained based solely on the uncorroborated testimony of the complaining witness. (*People v. Hart* (1999) 20 Cal.4th 546, 611; *People v. Gammage* (1992) 2 Cal.4th 693, 700; *People v. Scott* (1978) 21 Cal.3d 284, 296.) The trial court rejected appellant's contention that it was either inherently improbable or impossible that rape could have occurred because no male DNA was found on the vaginal swab. It found a rape could occur without finding DNA. Moreover, there was evidence to corroborate B.N.'s testimony; appellant's DNA was found on a swab taken from her neck, and her father found her distraught after the attack. On this record, there is no reason to conclude a different outcome would have resulted had the objection been overruled.

2.    *The petition was properly sustained*

B.N. testified that appellant had sexual intercourse without her consent. Appellant does not dispute the sufficiency of B.N.'s testimony to uphold the judgment, as such. Instead, he argues that because none of his DNA was found in B.N.'s vagina, there is an insufficient evidentiary basis upon which the trial court could have found he raped her.

"In considering appellant's claim of insufficiency of the evidence, we must determine only whether, on the record as a whole, any rational trier of fact could have found him guilty beyond a reasonable doubt. [Citations.] We view the evidence in the light most favorable to the prosecution, and presume in support of the judgment the existence of every fact the trier of fact could reasonably deduce from the evidence.

7

[Citation.] We affirm if the circumstances reasonably justify the trier of fact's findings even if they might also be reconciled with a contrary finding. [Citation.]" (*In re Jose P.* (2005) 131 Cal.App.4th 110, 115.)

Appellant contends that the evidence was insufficient because of an absence of physical evidence. He is incorrect. B.N.'s own testimony, which provided graphic detail of the attack, would have been sufficient by itself. Although we review the whole record, "[t]he uncorroborated testimony of a single witness is sufficient to sustain a conviction, unless the testimony is physically impossible or inherently improbable. The rule is applicable to sex cases." (*People v. Scott*, *supra*, 21 Cal.3d at p. 296; *People v. Panah* (2005) 35 Cal.4th 395, 489.) B.N.'s testimony was neither inherently improbable nor wholly uncorroborated. Appellant points to evidence tending to undermine her credibility, but this affects only the weight of her testimony; it is not a basis for dismissal. (*Scott*, pp. 296–297; *People v. Hart*, *supra*, 20 Cal.4th at p. 611.) Appellant's argument is nothing more than an improper request for this court to reweigh evidence or reassess the credibility of the witnesses. (See *People v. Lindberg* (2008) 45 Cal.4th 1, 37–38.) The trier of fact was entitled to believe B.N.'s testimony that appellant committed forcible rape. Although, the DNA evidence showing that appellant touched B.N.'s neck, but which shows no vaginal penetration is equivocal in that sense, it is nevertheless consistent with appellant's identity as B.N.'s assailant. Given the trial court's assessment of the strength of the testimonial evidence, it properly concluded that DNA evidence was unnecessary to create a solid case for guilt.

3.      *Trial court's erroneous characterization of offense as a "strike"*

After finding the petition true, the juvenile court told appellant he now had "a strike on [his] record." To that end, the minute order also indicates appellant was "advised the Petition . . . is a strike offense." Appellant correctly notes that both statements were wrong because he was 15 years old when he committed the offense. (Pen. Code, § 667, subd. (d)(3)(A).)

Appellant claims the "record must be corrected," but does not identify what relief is available for such an error. By its terms, the statute expressly provides that it is not a

8

strike offense if, as here, the perpetrator is 15 when the rape is committed.  We see no reason to correct a record which shows only that appellant received erroneous information.

4.      *Maximum term of confinement*

When a minor is removed from parental custody as a result of criminal violations sustained under Welfare and Institutions Code section 602, the court must specify the maximum term of imprisonment that could be imposed upon an adult convicted of the same offense or offenses.  (Welf. & Inst. Code, § 726, subd. (d).)  This provision, however, does not apply if a minor is never removed from his parent's physical custody.  (See *In re Matthew A.* (2008) 165 Cal.App.4th 537, 541.)

Appellant was not removed from parental custody.  Nevertheless, the trial court specified a maximum term of confinement.  The Attorney General maintains that we need not remand the matter to have the maximum term stricken from the order.  (See *In re Ali A.* (2006) 139 Cal.App.4th 569, 573–574 [maximum term lacks legal effect so need not be stricken].)  We find the reasoning of *In re Matthew A.*, *supra*, 165 Cal.App.4th 537 more compelling, and believe the better course is to strike the statutorily unjustified order setting a maximum term of confinement.  Appellant is entitled to a dispositional order that accurately reflects the punishment that may legally be imposed upon him at the time of disposition.

**DISPOSITION**

The order of wardship is modified by striking the maximum term of confinement. The juvenile court is directed to correct the minute order of the adjudication/disposition hearing accordingly.  As so modified, the order is affirmed.

NOT TO BE PUBLISHED.


JOHNSON


We concur:


ROTHSCHILD, Acting P. J.


MILLER, J.*

---

* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.