Filed 9/29/23  P. v. Karimi CA1/5

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION FIVE

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>ADIBA KARIMI,<br><br>        Defendant and Appellant. | A163509<br><br><br>(Contra Costa County<br>Super. Ct. No. 042001196) |

Defendant Adiba Karimi sexually assaulted her 14-year-old son, John Doe 1 (Doe), and a jury convicted her of six felonies, including forcible rape (Pen. Code, § 261, subd. (a)(2))[1] and forcible oral copulation (§ 287, subd. (c)(2)(C)).  Defendant was sentenced to 11 years 8 months in prison.  On appeal, defendant contends that insufficient evidence supports the rape and forcible oral copulation convictions and the prosecutor committed error during closing argument.  We affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

The People charged defendant with six felonies:  forcible rape (§ 261, subd. (a)(2)); forcible oral copulation (§ 287, subd. (c)(2)(C)); incest (§ 285); lewd act upon a child (§ 288, subd. (c)(1)); contact with a minor for sexual

_____

[1] All statutory citations herein are to the Penal Code.

offense (§ 288.3, subd. (a)); and meeting a minor for lewd purposes (§ 288.4, subd. (b)).  Trial began in May 2021 and revealed the following evidence.

## I.     *Prosecution's Case*

In August 2020, 14-year-old Doe lived with his mother—defendant—and baby sister.  One evening, Doe received text messages from defendant, who was in the other room.  Defendant texted:  "[C]an I ask u something very sexual!?" to which Doe replied:  "Ew but okay."  Defendant said she wanted to talk like girlfriend and boyfriend, and she asked Doe if he ever got "horny."  He responded that he was not interested in "that stuff" yet.  Defendant continued peppering Doe with questions.  She asked:  "[D]o u feel like u want to fuck"?  "I don't want to do it," Doe replied, testifying that he meant he did not feel like doing sexual stuff with girls.  Defendant also offered to "teach" Doe, stating:  "[M]om is better then [*sic*] any other friends. . . .  [I] want to be fist [*sic*] but we have to keep it very secret!"  Thinking defendant was going to have a sex talk with him, Doe asked defendant what she wanted him to do.  Defendant instructed:  "[I] have learn.  u have learn.  it is ur [your] age. . . .  come to my room. . . ."  "[T]ake off u [your] clothes. . . .  not mon [mom] son.  but two best friends."  Defendant stated she had "tought [taught]" her brother and he "learn[ed]."

Doe went into defendant's bedroom and sat on her bed.  Defendant removed his clothes and "got on top of" him.  She "put her hands on [his] shoulders and pushed [him] down onto the bed."  With defendant on top of him, Doe did not feel like he could get up.

While atop Doe, defendant started kissing his mouth.  He did not kiss her back.  Defendant put her breasts in Doe's face and instructed him to open his mouth.  Then—while  still on top of Doe—defendant put Doe's penis in her vagina.  At one point, defendant paused intercourse and orally copulated

2

Doe before resuming intercourse. When defendant asked Doe if he had ejaculated, he said yes, even though he had not, so she would stop. After defendant got off Doe, she took a shower, then told him to take one.

Doe returned to his room and texted his best friend about what happened. Scared that defendant would sexually assault him again, he left the house to meet his friend. While he was out, defendant called and texted him dozens of times. In her texts, defendant demanded that Doe not tell anyone, and she threatened to kill herself. Doe texted: "I didn't want to do that stuff u forced me to do that, that's being a bad mom, what u did was a crime." Early the next morning, Doe went to his grandmother's house, where the police interviewed him.[2]

During trial, Doe testified he "was confused" and uncomfortable when he started receiving the sexual texts from defendant. He initially thought his mother just wanted to have a sex talk, but once he was in defendant's bedroom and she was on top of him, he "couldn't talk." He was "scared" and "confused." Defendant pinned down his legs with her body while on top of him. Doe did not want defendant kissing him. He did not want to have sex with defendant, but she made him do it.

In discussing life prior to the incident, Doe testified that his younger brother and defendant fought a lot. Defendant previously injured Doe's brother by hitting him with a mirror and by throwing a hanger at him. When his brother and defendant fought, Doe feared defendant might injure him if he interfered. Defendant sometimes slapped her sons' heads, but not as discipline. Defendant controlled Doe's belongings, such as his phone and

---

[2] Doe did not tell the police everything because his grandmother instructed him not to. The following day, at the Children's Interview Center, Doe gave a detailed description of the incident.

video games.  She paid for Doe's food and clothes and gave him spending money.

In the days leading up to the incident, defendant searched the Internet for "morher [mother] and son teeneger corno [teenager porno] sex," "afghan mom fuck son teeneger [teenager] porno sex," and "14year old kids porno sex with mom."

## II.  *Defense Case*

Defendant was 34 years old at the time of the incident.  At trial, she denied sending sexual texts to Doe, denied doing anything in the bedroom with him, denied searching for pornography on her phone, and denied having sex with her brother.  On the night of the incident, she and Doe got into an argument about money and ordering food.  She then went to bed, woke up about 3:00 a.m., and noticed he was gone.  She admitted arguing with her sons and acknowledged that they would be slapped on the back of their heads.  However, she testified that in their family, slapping the boys on the head was just for "fun."  She felt she could not control Doe and that he was rude to her.  Defendant's brother testified he and defendant never engaged in sexual activity.  The father of Doe's baby sister testified Doe broke the rules and yelled at defendant.

## III.  *The Jury Verdict and Sentencing*

The jury convicted defendant of the charges, and the trial court sentenced her to 11 years 8 months in prison.

## DISCUSSION

Defendant raises two arguments seeking reversal of the forcible rape and forcible oral copulation convictions:  (1) insufficient evidence supports a finding that defendant used force, violence, duress, menace, or fear of immediate and unlawful bodily injury; and (2) the prosecutor committed

4

error during closing argument by stating defendant felt like " 'a ton of bricks' " to Doe. We address each argument in turn.

## I. *Sufficiency of Evidence*

" 'In reviewing the sufficiency of evidence under the due process clause of the Fourteenth Amendment to the United States Constitution, the question we ask is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." ' [Citations.] We apply an identical standard under the California Constitution. [Citation.] 'In determining whether a reasonable trier of fact could have found defendant guilty beyond a reasonable doubt, the appellate court "must view the evidence in a light most favorable to respondent and presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence." ' " (*People v. Young* (2005) 34 Cal.4th 1149, 1175.) If the convictions are "supported by substantial evidence, we are bound to give due deference to the trier of fact and not retry the case ourselves." (*People v. Veale* (2008) 160 Cal.App.4th 40, 46.) Substantial evidence is "evidence which is reasonable, credible, and of solid value . . . ." (*People v. Johnson* (1980) 26 Cal.3d 557, 578.)

As relevant here, forcible rape and forcible oral copulation require that the acts be accomplished against the victim's will "by means of force, violence, duress, menace, or fear of immediate and unlawful bodily injury" on the victim. (§§ 261, subd. (a)(2), 287, subd. (c)(2)(C).) As we explain *post*, substantial evidence supports defendant's convictions for rape and oral copulation accomplished by force and duress.

5

### A. Force

The term "force" in a forcible rape case has a common usage meaning. (*People v. Griffin* (2004) 33 Cal.4th 1015, 1024.) "Force" does not mean "force '*substantially* different from or *substantially* greater than' the physical force normally inherent in an act of consensual sexual intercourse." (*Id.* at p. 1023.) "To the contrary, it has long been recognized that 'in order to establish force within the meaning of section 261, [former] subdivision (2), the prosecution need only show the defendant used physical force of a degree sufficient to support a finding that the act of sexual intercourse was against the will of the [victim].' " (*Id.* at pp. 1023–1024.) The same is true for forcible oral copulation. "As with forcible rape, the gravamen of the crime of forcible oral copulation is a sexual act accomplished against the victim's will by means of force. . . . As with forcible rape, it is only when one participant in the act uses force to commit the act against the other person's will that an otherwise lawful act becomes unlawful." (*People v. Guido* (2005) 125 Cal.App.4th 566, 576.) The kind of physical force is immaterial. (*Griffin*, at p. 1024.)

Here, the question for the jury "was simply whether defendant used force to accomplish intercourse with [Doe] against [his] will, not whether the force [she] used overcame [Doe's] physical strength or ability to resist [her]." (*People v. Griffin, supra*, 33 Cal.4th at p. 1028.) This standard was met.

The record discloses substantial evidence that defendant used force to rape and orally copulate her son against his will. She initiated the assault by sending Doe sexually explicit texts. Then, once Doe was on her bed, she removed his clothes, "put her hands on [his] shoulders and pushed [him] down onto the bed," and climbed on top of him. Defendant kissed his mouth and put her breasts in his face. While on top of him, defendant positioned her

body on Doe and inserted his penis into her vagina. Defendant repositioned her body to accomplish oral copulation and then resumed intercourse. Doe testified defendant pinned down his legs with her body. Doe felt like he could not get up. He was "scared" and "confused." Doe testified he did not want to have intercourse with defendant; she made him do it. (See *In re Jose P.* (2005) 131 Cal.App.4th 110, 116 [while there was no evidence that the defendant used his weight to achieve intercourse, separately from being on top of the victim, the "force inherently involved in the penetration itself was sufficient"]; *People v. Young* (1987) 190 Cal.App.3d 248, 258 [defendant used sufficient force "in both the penetration and the physical movement and positioning of [the victim's] body in accomplishing the act"].)

Additionally, the mother–child relationship and the 20-year age difference between defendant and Doe further support a finding of force. (See *People v. Mejia* (2007) 155 Cal.App.4th 86, 100 [defendant—victim's grandfather—was 40 years older and an authority figure for the victim].)

Defendant concedes force was used, not just in the sex acts themselves but also by defendant's lightly pushing, or leaning into, Doe. Defendant argues, though, that no reasonable 14-year-old boy would react by relenting to his mother's sexual advances. However, that is not our determination to make on appeal. Given the evidence, the jury could reasonably conclude otherwise. In sum, substantial evidence in the record supports the convictions of rape and oral copulation accomplished by force.

### B. Duress

A separate way to accomplish forcible rape and forcible oral copulation is by duress. (§§ 261, subd. (a)(2), 287, subd. (c)(2)(C).) Defendant asserts there is no evidence of duress, but we disagree.

7

The rape statute defines "duress" as "a direct or implied threat of force, violence, danger, or retribution sufficient to coerce a reasonable person of ordinary susceptibilities to perform an act which otherwise would not have been performed, or acquiesce in an act to which one otherwise would not have submitted." (§ 261, subd. (b)(1).) Duress in accomplishing oral copulation has a similar meaning. (*People v. Leal* (2004) 33 Cal.4th 999, 1004–1005.) Factors to consider in determining whether duress exists include the age of the victim and the victim's relationship to the defendant. (§ 261, subd. (b)(1) [rape]; CALCRIM No. 1015 [forcible oral copulation].)

Substantial evidence demonstrates defendant raped and orally copulated Doe by duress. Doe testified that during the sexual assault, defendant did not threaten him. But the evidence supports a reasonable inference that defendant made an implied threat, based on Doe's testimony that he feared defendant before the incident. Doe testified that when his brother and defendant fought, he was afraid defendant might injure him if he interfered. As defendant raped him, Doe was "scared." After the incident, Doe was afraid defendant would assault him again. Important additional factors demonstrating duress include the parent–child relationship, their 20-year age difference, and defendant's roles as main authority figure and provider of shelter, food and money. (*People v. Veale, supra,* 160 Cal.App.4th at p. 47 [defendant stepfather had a position of authority in the family]; *People v. Cochran* (2002) 103 Cal.App.4th 8, 14–15 [testimony that defendant did not use threats must be considered in light of victim's age and relationship to defendant; disparity between attacker's and victim's sizes was just one of multiple considerations supporting a finding of duress].)

"The very nature of duress is psychological coercion." (*People v. Cochran, supra,* 103 Cal.App.4th at p. 15.) Here, the jury could reasonably

8

infer psychological coercion from the text messages defendant sent Doe before assaulting him.  Defendant texted Doe that she could " 'teach' " him, but that they had " 'to keep it very secret.' "  She said she had " 'taught' " her brother and he had " 'learn[ed],' " trying to coerce Doe to believe that sex between family members was normal.  In discussing the parent–child relationship, the *Cochran* court noted, "as a factual matter, when the victim is as young as this victim and is molested by her father in the family home, in all but the rarest cases duress will be present." (*Id*. at p. 16, fn. 6.)  While the victim in *Cochran* was approximately five years younger than Doe, the rationale applies with equal force here, as Doe was a minor whose mother sexually assaulted him in the family home.

Viewing the evidence—as we must—in the light most favorable to the prosecution, we conclude there was substantial evidence that defendant accomplished the sex acts by duress.

## II.   *Prosecutorial Error*

Defendant next contends that the prosecutor committed error that mandates reversal of the rape and forcible oral copulation convictions.  We are not persuaded.

### A.   **No Error**

During closing argument, in summarizing the events on the night defendant summoned Doe to her room and sexually assaulted him, the prosecutor stated, "They never discussed this before.  There's no reason for her to think that that is what he wants.  He goes in, she pushes him back on the bed and feels like a ton of bricks to him."  Defense counsel objected.  The trial court overruled the objection and explained to the jury, "[B]oth sides are arguing the case based on what they think the evidence proved.  You ultimately have to decide what facts are established by the evidence . . . ."

9

"A prosecutor's conduct violates the Fourteenth Amendment to the federal Constitution when it infects the trial with such unfairness as to make the conviction a denial of due process.  Conduct by a prosecutor that does not render a criminal trial fundamentally unfair is prosecutorial misconduct under state law only if it involves the use of deceptive or reprehensible methods to attempt to persuade either the trial court or the jury." (*People v. Morales* (2001) 25 Cal.4th 34, 44.)  A " 'more apt description' " for misconduct is " 'prosecutorial error.' " (*People v. Centeno* (2014) 60 Cal.4th 659, 666–667.)  For comments made to the jury, "the question is whether there is a reasonable likelihood that the jury construed or applied any of the complained-of remarks in an objectionable fashion." (*Morales*, at p. 44.)  During closing argument, the prosecutor may discuss the evidence and comment on reasonable inferences that may be drawn from it.  (*Ibid.*)  "Whether the inferences the prosecutor draws are reasonable is for the jury to decide." (*People v. Dennis* (1998) 17 Cal.4th 468, 522.)

Defendant argues the "ton of bricks" comment constitutes prosecutorial error because Doe never testified that her weight felt heavy on his body and, as a result, the prosecutor's claim was not a fair inference from the evidence.  Not so.  Doe testified defendant got on top of him by putting her hands on his shoulders and pushing him down onto the bed.  He also testified she leaned down on him and pinned down his legs with her body, such that he felt like he could not get up.  In light of this evidence, the prosecutor's "ton of bricks" remark was a reasonable inference.  Given Doe's testimony, it would not be unreasonable for the jury to consider defendant's weight while on top of Doe.  There is no showing that the jury took the remark to mean defendant literally weighed one ton.  Since there is not a reasonable likelihood the jury construed the prosecutor's "ton of bricks" remark in an objectionable fashion,

the prosecutor did not commit error. (*People v. Morales, supra*, 25 Cal.4th at p. 44.)

### B. Harmless Error

Even if the prosecutor's remark constituted error, such error was harmless. "Prosecutorial misconduct can result in reversal under state law if there was a 'reasonable likelihood of a more favorable verdict in the absence of the challenged conduct' and under federal law if the misconduct was not 'harmless beyond a reasonable doubt.' " (*People v. Rivera* (2019) 7 Cal.5th 306, 334.) The prosecutor's comment was harmless under both standards.

Despite defendant's assertions otherwise, it would be unreasonable to conclude the jury would not have convicted defendant without the prosecutor's "ton of bricks" comment. (*People v. Rivera, supra*, 7 Cal.5th at p. 334.) And we can declare a belief that the remark was harmless beyond a reasonable doubt. (*Chapman v. California* (1967) 386 U.S. 18, 24.) Given the evidence of force and duress, we have no reason to infer the jury drew the most damaging, instead of the least damaging, meaning from the prosecutor's remark. (*People v. Ramirez* (2022) 13 Cal.5th 997, 1129–1130; *People v. Smith* (2015) 61 Cal.4th 18, 52 [harmless error given "overwhelming evidence of defendant's guilt"].)

Additionally, the trial court's jury instructions eliminated any potential prejudice. For instance, the jurors were instructed on CALCRIM No. 200, Duties of Judge and Jury, and CALCRIM No. 222, Evidence.[3] (See *People v.*

---

[3] The trial court instructed the jury: "You must decide what the facts are. It is up to all of you, and you alone, to decide what happened, based only on the evidence that has been presented to you in this trial." (CALCRIM No. 200.) "Nothing that the attorneys say is evidence. In their . . . closing arguments, the attorneys discuss the case, but their remarks are not evidence. . . . Only the witnesses' answers are evidence." (CALCRIM No. 222.)

*Friend* (2009) 47 Cal.4th 1, 84 [no prejudice as trial court instructed jury that counsel's arguments were not evidence and the jury should rely on its own recollection of witness testimony].)  We presume the jury complied with the trial court's instructions.  (*People v. Flinner* (2020) 10 Cal.5th 686, 717.)

## DISPOSITION

The judgment is affirmed.

_____
Jackson, P. J.

WE CONCUR:

_____
Simons, J.

_____
Chou, J.

A163509/*People v. Adiba Karimi*