Filed 9/9/14  P. v. Vasquez CA2/1

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>FREDDY VASQUEZ,<br><br>    Defendant and Appellant. | B251618<br><br>(Los Angeles County<br>Super. Ct. No. VA128403) |

Appeal from judgment of the Los Angeles Superior Court.  Thomas I. McKnew, Judge.  Affirmed.

Liberty Bell Law Group, Michele H. Kendall; Law Offices of Christina Diedoardo Christina A. Diedoardo for Defendant and Appellant.

Kamala Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Steven D. Matthews, Supervising Deputy Attorney General, J. Michael Lehmann, Deputy Attorney General, for Plaintiff and Respondent.

_____

On June 21, 2013, a jury found appellant Freddy E. Vasquez guilty of aggravated sexual assault of a child (count 1) (Pen. Code, § 269, subd. (a)(1)), consisting of rape (Pen. Code, § 261, subd. (a)(2)), and of a lewd act upon a child (count 2). (Pen. Code, § 288, subd. (a).) It found true the special allegation that Vasquez had substantial sexual conduct with the victim. (Pen. Code, § 1203.066, subd. (a)(8).) The court sentenced Vasquez to prison on count 1 for a term of 15 years to life, and stayed a term of six years on count 2. (Pen. Code, § 654.)[1]

Vasquez appeals, contending that the prosecution failed to meet its burden of proof on both counts, and that the trial court improperly questioned witnesses and obstructed his cross-examination. We affirm.

## Background

Melissa M. met defendant Vasquez (who she believed was born in 1976) at a party at the end of 1994. In October 1996, when Vasquez was 19, they had a baby, M. M. was 16 years old and in the 12th grade at the time of the trial. Vasquez lived in a room in his family's garage.

M. testified that she had lived on the same block and had been a close friend of the alleged victim, Nina, until they were in middle school.[2] One day, when M. and Nina were around 5 or 6 years old, after playing in the sprinklers in the front of Vasquez's parents house she and Nina went to the side of the garage where the door to Vasquez's room was open. When they were inside, Vasquez (M.'s father) told them to take off their bathing suits, which they did. M. saw Nina lying on the bed, naked, with Vasquez lying on top of her. His shirt was on, but she did not recall whether he had taken his basketball shorts off, and she did not see their body movements.

---

[1] Further statutory references are to the Penal Code unless otherwise specified.

[2] We refer to witnesses who share last names with other witnesses by their given names.

After a few minutes Nina got up and they put on their bathing suits. They went outside, but Nina did not want to play again, and went home. M.'s mother then called M. over to fix her bathing suit, which she had not put on correctly. Vasquez leaned over and was smiling at her, "and made me feel awkward since then."

She never spoke with Nina about the incident. She last spoke with Nina when she was in the eighth grade and Nina was in the seventh grade. When she told these events to Detective Bailey, she described them as a recurring dream that never goes away. She both remembers these events, and sees them as a dream. She denied saying that she has a bad relationship with Vasquez, or that she is mad at him. She denied telling Detective Bailey that her cousin Andy was also in the garage with them, and does not recall him being there. She did not tell her mother about the incident because she did not want to talk about it—she just wanted to keep it to herself.

Nina, who was at the time of the trial 16 years old and going into the 11th grade, testified that when she was five or six years old she had been playing in the sprinklers with M. and others in her family, then was led to the backyard and into the garage at M.'s suggestion. M.'s cousin Andy, who was a few years older, closed the door, leaving Nina and M. in the garage with Vasquez. Nina had not known Vasquez before that time, though she knew he was M.'s father. Andy was by the door. Vasquez asked her to take off her bathing suit, then took it off for her. She recalled being laid down on a hard surface, then she felt a sharp penetrating pain in her vaginal area, and she started crying. Nina was confused, scared, and "kind of frozen in the moment." When it stopped she got up and asked if she could go home. Vasquez asked if she was okay, and gave her a popsicle from the refrigerator. She then ran home, crying. She does not recall whether she was or was not wearing anything.

Nina had never spoken with M., or anyone else, about the incident. But once when they were playing at a friend's house, M. had mentioned having a dream about being in her garage with her dad. Nina changed the subject because she knew M. was referring to the incident, and she did not want to talk about it. The incident came to light

when one day she told her close friends about it, and they persuaded her to tell her parents.

Detective Bailey testified that in his first interview of M. she had told him that everything was only a dream, but in the second interview she had said that it was a recurring dream that was more like a nightmare, which she eventually realized was actually real and not a dream. In the second interview she said that Andy had been present during the incident.

Vasquez's nephew Andy denied that any such incident had occurred. He was never in Vasquez's room with just M. and Nina and Vasquez. M. never mentioned any such thing to him. As the older kid in the neighborhood, if the incident had happened as Nina reported it, he would have immediately said something.

**Discussion**

**1. The evidence is sufficient to support the jury's implied finding of duress.**

Vasquez contends that his conviction of the crime of rape under section 269, subdivision (a)(1) is unsupported by sufficient evidence. The statute does not apply to *all* rapes of a child under the age of 14, he contends, but only to rapes that are considered particularly heinous because they are accomplished by force, violence, duress, menace, or fear of immediate and unlawful bodily injury (§ 261, subd. (a)(2)), or by credible threat of retaliation (§ 261, subd. (a)(6)). He argues that even assuming the evidence is sufficient to establish the crime of rape, in light of the conflicts in the witnesses' testimony the evidence is not sufficient to establish that it was accomplished with the degree of force or duress that is required to sustain a conviction under subdivision (a)(1) of section 269.

Section 269, subdivision (a)(1), provides (so far as relevant to this case) that the rape of a child under the age of 14, and seven or more years younger than the perpetrator, constitutes an aggravated sexual assault of a child. Section 261, subdivision (a), defines rape as an act of sexual intercourse when it is accomplished against the victim's will by

4

force, violence, duress, menace, or fear of immediate and unlawful bodily injury (subd. (a)(2)), or by credible threat of retaliation (subd. (a)(6)).

In order to determine whether the evidence is sufficient to provide a substantial basis for a jury's determination that the defendant is guilty, we view the evidence in the light most favorable to the judgment. (*People v. Earp* (1999) 20 Cal.4th 826, 887.) In support of the judgment we presume the existence of every fact that the jury could reasonably deduce from the evidence, whether direct or circumstantial. (*People v. Osband* (1996) 13 Cal.4th 622, 690; *People v. Ceja* (1993) 4 Cal.4th 1134, 1138.) Our job is to determine whether "'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" (*People v. Young* (1987) 190 Cal.App.3d 248, 254.) If the verdict is supported by substantial evidence, we must accord due deference to the trier of fact and not substitute our own evaluation of a witness's credibility for that of the fact-finder. (*People v. Samuel* (1981) 29 Cal.3d 489, 505.) In order to warrant our rejection of statements that have been believed by a trier of fact, "there must exist either a physical impossibility that they are true or their falsity must be apparent without resorting to inferences or deductions." (*People v. Mayberry* (1975) 15 Cal.3d 143, 150; see *People v. Smith* (2011) 198 Cal.App.4th 415, 427 [victim's testimony, though internally inconsistent, supports determination that defendant's molestation when victim was eight years old involved substantial sexual conduct].)

Duress, as used in this context, means the use of a direct or implied threat of force, violence, danger, hardship, or retribution sufficient to cause a reasonable person—in this case a reasonable child—to do or submit to something that she would not otherwise do or submit to, considering all the circumstances, including her age and her relationship to the defendant. (*People v. Soto* (2011) 51 Cal.4th 229, 246, fn. 9; *People v. Leal* (2004) 33 Cal.4th 999, 1004-1010.) The existence of duress is a question of fact to be determined by the trier of fact "after considering all the circumstances." (*People v. Superior Court (Kneip)* (1990) 219 Cal.App.3d 235, 238.)

The evidence, construed most favorably to the verdicts, was that Vasquez was the adult father of her close friend, an authority figure who was much larger and older than the six-year-old victim. Vasquez had instructed Nina to remove her bathing suit, and that he had himself removed it when she did not. He had laid her on a table or bed. He had penetrated her vagina, causing fear and pain. She had left the garage crying, but only after asking for and receiving Vasquez's permission.

The element of duress can be established even in the absence of any express threats or use of force. For example, in *People v. Pitmon* (1985) 170 Cal.App.3d 38, 51 (disapproved on another ground in *People v. Soto*, *supra*, 51 Cal.4th at p. 248, fn. 12), the jury's finding of duress was upheld on evidence of an eight-year-old's acquiescence in molestations by an adult at his school, holding that disparity in age and size between the victim and the adult authority figure supports inference of the child's sense of vulnerability.[3] In *People v. Veale* (2008) 160 Cal.App.4th 40, 47-50, the court held that factors supporting the jury's finding of duress included the six-year-old victim's youth, the disparity between the victim's and the defendant's age and size, and the defendant stepfather's position of authority in the family over victim. (See *People v. Schulz* (1992) 2 Cal.App.4th 999, 1005 [duress can arise from the relationship between the defendant and the victim and their relative ages and sizes].)

The evidence in this case from which the jury could infer that Nina submitted to Vasquez's molestation and rape through force and duress include his superior size, age, and position of authority; the victim's presence in his room; his demands that she remove her bathing suit and his removal of the bathing suit when she did not; his direction to lie down and his placement of her on the table or bed when she did not; and the fact that she was restrained by the weight of his body on top of her as she lay naked under him during the penetration. (See *People v. Young* (1987) 190 Cal.App.3d 248, 257-258 [force in act

---

[3] Because the victim's consent is not a defense to the crime of aggravated lewd conduct committed by an adult on a child under the age of 14, independent proof that the lewd act was against the victim's will is unnecessary. (*People v. Soto*, *supra*, 51 Cal.4th at p. 248.)

of sexual intercourse with six-year-old victim is supported by evidence of positioning of victim, penetration, and defendant's physical movement].) The fact that Nina submitted to Vasquez's molestation under duress is also evidenced by the fact that during the molestation she was crying from fear and pain, that she sought to leave but did not do so until she obtained his permission, and that she then ran home crying. If the jury believed Nina's account of these facts and events—as we must presume it did (*People v. Samuel*, *supra*, 29 Cal.3d at p. 505)—it was justified in concluding that Nina submitted to Vasquez's molestation and rape under duress.[4]

## 2. The trial court did not abuse its discretion or prejudice the defendant in questioning witnesses.

Vasquez's appeal charges that the trial court abandoned its role as a neutral arbiter and actively assisted the prosecution, engaging in misconduct that requires reversal of his convictions. He cites a handful of incidents as examples of the trial court's alleged misconduct to support this contention.

The first cited incident occurred after Vasquez's daughter M. had testified on direct examination that Nina was lying on her back on the bed, and Vasquez was lying on top of her with his shirt on. Vasquez charges that the trial court improperly interrupted the prosecution's examination to ask if she had seen whether Vasquez "had exposed himself in any way"—to which M. answered that she had not. According to Vasquez, the court then "commandeered the role of the People" by asking M. if she recalled when the incident occurred.

The court's interruption of the prosecution's direct examination actually began somewhat before the question that Vasquez cites as an example of misconduct. The entire interruption is set forth below:

---

[4] Because we find the evidence sufficient to support the jury's implied finding of duress, we do not consider whether the evidence is or is not also sufficient to support findings of such factors as violence, menace, fear of bodily injury, or threat of retaliation. (§ 261, subd. (a)(2) & (6).)

7

"The Court: You said he had a green T-shirt on. Did he have his pants on at the time?

"The Witness: I did not see his pants. I know he was wearing basketball shorts but I didn't see if they came off or not.

"The Court: In other words, you can't recall whether he had his pants on or off at the time; is that correct?

"The Witness: Yes.

"The Court: Did you see that he had exposed himself in any way?

"The Witness: No.

"The Court: All right. Do you recall when this occurred approximately? Let's start with the year. Do you recall the year in which this occurred?

"The Witness: No.

"The Court: Do you know whether or not it occurred --"

The prosecutor then advised the trial court that "we have other witnesses for that." But the trial court stated its intention to ask the question of the witness who "is here": "Did it occur between December 27, 2000 and December 26, 2003, if you can remember? Can you remember?" M. answered that she did not remember.

The next incident cited by Vasquez to support his contention of judicial bias and interference occurred after M. had testified on direct examination about having told the detective that she recalled the incident as a dream. On direct examination she testified:

"Q: When you talked to Detective Bailey, did you mention something about a dream?

"A: Yes.

"Q: What did you say?

"A: Everything that I just had explained, I told him the same thing, but it's as a dream. I re-dream all the time.

"Q: What do you mean by that, like regularly? Or tell us what happens.

"A: Just like the same thing that I had explained, I just re-dream it all the time. It just comes back, it never goes away."

8

On cross-examination, M. was asked about the differences between what she said she remembered, and what she had told the detective:

"Q: Now you remember it as being an incident, it is no longer just a dream?

"A: I remember it and it's a dream at the same time.

"Q: When you spoke to the detective, why did you tell him it was just a dream then?

"A: Because it is a dream – well, it's not just a dream. It is a dream that actually happened.

"Q: But you didn't tell the detective that, you told the detective you had this dream and you believed it happened, not that it did happen or that you remember?

"A: I do remember it."

When counsel continued to probe the apparent discrepancy in her testimony, the trial court interrupted to ask whether M. understood counsel's compound question:

"Q: But why didn't you tell the detective that when he interviewed you about this? Why did you tell him it was a dream?"

"The Court: You asked the question. Do you understand the question?

"The Witness: Sort of.

"The Court: He's saying that—he is reading from a document wherein you had said to a detective that you dreamed it happened. But your testimony is, as I understand it, that not only have you had the dreams reoccur, but you recall it actually happened. Is that your testimony?

"The Witness: Yes.

"The Court: Next question.

"[Vasquez's attorney]: I still have no answer—

"The Court: Next question."

After exploring a number of other subjects with M., Vasquez's attorney returned in his cross-examination to the question of what she had told the detective: Q: "Now your testimony also is that this isn't just a dream that you had, like you told the detective, but it is actually you now remember it recurring --" The trial court interrupted the

9

question: "The report reflects what she told the detective. She said she didn't tell the detective that. All right, go ahead. Your question assumes a fact not in evidence." Then the court added: "Did you object [apparently referring to the prosecutor]? No, you didn't object. I'm sorry, next question. Next question. That was a rhetorical comment by the court."

The trial court then permitted Vasquez's counsel to reexamine M. (over the prosecution's objections) on that subject (and others) at some length, including about whether the incident was a dream, whether it actually occurred, and what she had and had not told the detective.

The next incident cited as an example of the trial court's bias is its statement to Nina during her direct examination by the prosecution, that "I know this is very painful for you." The statement came after a number of pauses in the proceedings, apparently because Nina was crying. After Nina was asked whether something had happened to her when she was between four and seven years old and was with M., the court stopped to advise her:

"What we're going to do, young lady, you stop and you needn't say a word if you are crying or you feel uncomfortable until you're ready. You tell me when you're ready. Just take your time.

"The Witness: I'm ready.

"The Court: It doesn't sound as though you are because, for the record, I note you are crying. Don't hurry it, take your time. If you would like some water, we'll get you a glass of water.

"The Witness: Thank you.

"The Court: Would you like a glass of water?

"The Witness: No, I'm okay.

"The Court: Just take your time and when you stop crying that's when we'll begin. Okay? It might help if you just look at the prosecutor, Mr. Rubalcava. If you can, in your own mind, set aside that you have all these other people here in this courtroom.

"The Witness: Okay. I'm ready. I'm sorry."

10

A few questions later, the court again interrupted the direct examination: "Don't forget, you can stop. Take your time. Take a deep breath. No one is going to rush you." And then the statement that Vasquez contends exemplifies its bias: "I know this is very painful for you."[5]

Vasquez's final example of the court's alleged bias came during Nina's cross-examination about Vasquez's clothing during the incident:

"Q: Do you remember what he was wearing?

"A: I want to say a white shirt, but I don't remember any, like –

"The Court: Don't speculate, it doesn't help. If you don't remember, say 'I don't remember.' If you do remember, indicate what he was wearing.

"The Witness: Okay.

"The Court: What's the answer?

"The Witness: I don't remember."

Vasquez's counsel then moved on to another subject. At no point during (or after) the trial did Vasquez's counsel interpose any objection to the trial court's interruptions, questions, or advice to the witnesses, and his counsel did not seek any admonition or further instruction to the jury.[6]

Vasquez contends on appeal that the cited incidents exemplify the trial court's bias, by "repeatedly and independently interrogat[ing] witnesses with the intent to elicit

---

[5] The court interrupted Nina's direct examination testimony a number of additional times to suggest that the prosecutor "take it in short questions to get through this," and to advise Nina to take her time answering.

[6] In the course of instructions to the jury the court instructed that "I have not intended by anything I have done or said, by any questions that I may have asked or by anything I may have done, to intimate or suggest that you should find – what you should find to be the facts in this case or that I believe or disbelieve any witness. I trust I have not done that. [¶] If anything I have done or said has seemed to so indicate, you will disregard it and you must reach your own conclusions on your own." (See CALJIC No. 17.30; *People v. Franklin* (1976) 56 Cal.App.3d 18, 24 [cautionary instruction of CALJIC No. 17.30 sufficiently protects defendant "from any prejudice that may have remotely occurred" as a result of court's improper conduct].)

11

specific testimony helpful to the prosecution, while repeatedly and independently balking [blocking?] the efforts of defense counsel to elicit testimony helpful or exculpatory to the defense." Assuming that counsel's failure to interpose an objection in the trial court did not waive the issue for appeal (see *People v. Anderson* (1990) 52 Cal.3d 453, 468), the issue nevertheless lacks merit.

The record does not reveal that the trial court disparaged or treated the defendant or his counsel unfairly, or that it obstructed the defense's examination of prosecution witnesses. Vasquez has identified no discrepancies or inconsistencies in the prosecution's evidence that it was unable to fully explore and expose to the jury due to the court's interruptions and rulings. (*People v. Santana* (2000) 80 Cal.App.4th 1194, 1206; *People v. Fudge* (1994) 7 Cal.4th 1075, 1107.)

The law expressly empowers the trial court to examine witnesses, and permits the defendant to interpose any appropriate objections to any questions posed by the court. (Evid. Code, § 775; *People v. Cook* (2006) 39 Cal.4th 566, 597 [trial court has discretion and duty to question witness to elicit material facts or to clarify unclear testimony].) The court's question to M. whether she had seen Vasquez "expose[ ] himself in any way," was perfectly within the court's discretion under that express statutory grant of discretion. It also was wholly unobjectionable, and in light of M.'s negative response, apparently was actually beneficial rather than prejudicial to Vasquez's defense. Nor could Vasquez have been prejudiced by the court's inquiry whether M. could recall when the incident had occurred.

The court was equally justified in interposing its own (unstated and implied) objection when M. was asked the compound question about what she had or had not told the detective, and why. The court stated to counsel, "You asked the question," then to the witness, "Do you understand the question?" The witness's reply, "Sort of," justified the court's explanation—precisely consistent with the record—that although the detective's notes stated that she had told him that she dreamed the incident, her testimony seemed to be that the reoccurring dreams "actually happened" – to which the court appropriately asked the witness, "Is that your testimony?"

12

Later, when counsel returned in his cross-examination to the subject of discrepancies in M.'s recollection of the incident, the court summarized its understanding of her testimony in a manner that might have suggested some impatience with the repetition of questions on the subject. But after dismissing its interruption as "a rhetorical comment by the court," it went on to permit Vasquez's counsel great leeway in reexamining M. on the subject at some length, over the prosecution's repeated objections. Vasquez's counsel did not object to the court's interruption or comments at the time, and sought no admonition or instruction to the jury concerning it, beyond that in CALJIC No. 17.30. (*People v. Franklin*, *supra*, 56 Cal.App.3d at p. 24 [Cautionary instruction of CALJIC No. 17.30 is "sufficient to protect the defendant from any prejudice that may have remotely occurred"].)

Vasquez has suggested no way in which his counsel was impeded from fully examining the witness on that subject, and we see no way in which the incident could have impeded his defense or otherwise prejudiced him in the jury's eyes.

We dismiss as patently untenable Vasquez's contention that the court acted improperly by saying to the witness, "I know this is very painful for you." The court's conduct was in no way inappropriate. The record reflects that the 16-year-old witness was visibly upset and crying, testifying in a public courtroom about the sexual abuse she claimed to have experienced, and to have harbored for a decade—most of her life—as a personal secret even from her closest friends and family. The court's offers of time to collect her emotions, and perhaps a glass of water, before proceeding with her testimony about the difficult and upsetting subject indicates only the court's appropriate recognition of the witness's obvious distress. The court's expressions of empathy and compassion were in no sense inappropriate, for they neither expressed nor implied its acceptance of the truth of her testimony. Far from reflecting bias or misconduct, the court's comments to the witness were an appropriate performance of its role as representative of the state's

13

system of justice, and the court's obligation to treat all who appear before it with dignity and respect.[7]

And the court later instructed the jury to disregard anything it might believe was an indication of the judge's personal views, dispelling any possibility of prejudice. "Even where conduct by a trial judge may approach the boundaries of improper discretion"—a possibility we reject in this case—"an admonition to disregard his conduct can be deemed curative, and it must be assumed that the jury was possessed of ordinary intelligence and followed such instructions." (*People v. Franklin*, *supra*, 56 Cal.App.3d at p. 24 [cautionary instruction of CALJIC No. 17.30 is "sufficient to protect the defendant from any prejudice that may have remotely occurred"].)

The final incident that Vasquez cites equally fails to demonstrate any bias or misconduct by the court, or prejudice to the defendant. M. had testified her father had been wearing a green T-shirt. When asked the color of his shirt, Nina said, "I want to say a white shirt, but I don't remember . . . ." Then, in response to the court's appropriate admonition not to speculate, she confirmed that she did not remember the shirt's color. This incident could not have more plainly exposed to the jury the discrepancy between Nina's recollection and M.'s as to the shirt's color, and it re-emphasized Nina's inability to clearly recall that aspect of the incident. Vasquez has cited it as misconduct, but he has not suggested how it could have prejudiced his defense. We conclude that this incident reflects neither misconduct nor prejudice.

Viewed separately or together, the cited incidents reveal no abuse of discretion or misconduct and no indication of bias or prejudice.

---

[7] The trial court's statements to Nina are not at all comparable to the statement the court held to be improper (though harmless error) in *People v. Banks* (Aug. 14, 2014, S080477) ___ Cal.4th ___. In that case the trial judge told the witness he was "sorry this happened to you," apparently referring to the molestation she claimed to have suffered at the defendant's hands. Here, the trial judge expressed empathy for Nina's obvious discomfort in testifying, offering to wait until she stopped crying and to provide her with a glass of water; but he did not vouch for her credibility or indicate his belief in the truth of her testimony about the defendant's conduct. Faced with a crying witness, it is not clear what else the court could have done or said.

### 3. The evidence fully supports the count 2 verdict.

Section 288, subdivision (a), makes unlawful the commission of any lewd act on a child under the age of 14 with the intent of arousing lust, passions, or sexual desires. The special circumstance that the jury found true required proof that Vasquez engaged in substantial sexual conduct with the victim, who was under 14, consisting of penetration of her vagina or rectum with his penis or a foreign object. (§ 1203.066, subds. (a), (b).)

Vasquez contends that "[g]iven the substantial conflicts between the testimony of M. and Nina on multiple areas of significance and the trial court's misconduct," no reasonable jury could find him guilty of a lewd act on a child (§ 288), or of the special circumstance of substantial sexual conduct with a person under the age of 14. (§ 1203.066.) To the contrary, the evidence recounted above, if believed by the jury, amply supports the challenged findings.

As we have indicated above, the jury was entitled to credit the prosecution's evidence, notwithstanding any discrepancies and conflicts. (*People v. Mayberry*, *supra*, 15 Cal.3d at p. 150 [testimony that has been believed by trier of fact can be rejected only if there exists "either a physical impossibility that they are true or their falsity must be apparent without resorting to inferences or deductions"] *People v. Smith*, *supra*, 198 Cal.App.4th 415 [internally inconsistent testimony is sufficient to support jury determination that victim's molestation involved substantial sexual conduct]; *People v. Young* (2005) 34 Cal.4th 1149, 1181 [testimony of a single witness is sufficient].) On this basis we reject Vasquez's challenge to the sufficiency of the evidence supporting his count 2 conviction.

15

**Disposition**

The judgment is affirmed.

NOT TO BE PUBLISHED.


CHANEY, Acting P. J.


I concur:


MILLER, J.[*]

---

[*] Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

JOHNSON, J., Concurring.

I concur in the result, and most of the analysis, of the majority decision. I write separately for the purpose of expressing my concern that the trial court's statement to the rape victim, "I know this is very painful for you," was error, but harmless error in light of the trial court's admonition to the jury to disregard anything it might believe was an indication of the judge's personal views.

While I do not believe that the court harbored bias or intended to show bias in its empathetic statement to the 16-year-old rape victim, it is clear that the statement potentially could have conveyed the wrong message to the jury, particularly under the circumstances of this case that involve an event occurring 11 years earlier. Thus, I strongly disagree with the majority's dismissal as "patently untenable," of appellant Vasquez's contention that the court's statement was improper. At the very least, the jury could have reasonably understood the trial court's statement to mean that the court believed that the victim was sincere and honest in her testimony. Accordingly, the court effectively vouched for the victim/witness in a case where she was testifying about a rape which had allegedly occurred some years ago. Further, as the majority notes, the victim herself reported that for a long time she believed her rape recollection was only a recurring nightmare rather than an actual event. Defendant's nephew, who was present at the alleged crime scene, denied that any rape occurred. Thus, the trial court's vouching for the rape victim was not insignificant.

Recently, in *People v. Banks* (Aug. 14, 2014, S080477) ___ Cal.4th ___ [2014 Cal. Lexis 5468], the California Supreme Court addressed a trial court's similar statements to an alleged rape victim during the death penalty phase of a murder case, and expressly found such statements inappropriate because they improperly vouched for the witness's testimony. In *Banks*, the "[d]efendant's ex-girlfriend Bridget R., testified that defendant brutally assaulted her, raped her in front of her three-year-old daughter, and threatened to kill her family if she testified against him. At the end of her testimony, the court told Bridget R., '[m]a'am, I'm sorry this happened to you and I want to thank you

for coming back down.' A few minutes later, after brief testimony by another witness, the court told the jury that its statement to Bridget R. had been inappropriate. . . . [¶] 'You will have to determine whether the incident described occurred, not me. [¶] I want you to do the following: [¶] Disregard my comments to her that the court was sorry what happened. [¶] You decide what happened. [¶] My comments mean zero, absolutely zero, when it came to that. [¶] . . . [¶] It is improper and inappropriate.'" (*Id.* at [pp. 173–174].)

Assessing the trial court's conduct for bias, the Supreme Court recognized the rule that a trial judge may not vouch for the credibility of a witness. However, the *Banks* court went on to observe, "[a]lthough it is understandable that the judge would offer kind words to a sympathetic witness, the court's comments improperly vouched for Bridget R. by suggesting that her testimony was true. But this exchange does not demonstrate that the court was biased against defendant. Rather, it is clear that the court experienced a momentary lapse of judgment as a result of Bridget R.'s moving testimony. The court quickly corrected its error and properly instructed that jury that its comments were 'improper and inappropriate.' The court's prompt and sincere attempt to rectify its error makes clear that its improper comments were not motivated by, or evidence of, judicial bias." (*People v. Banks*, *supra*, ___ Cal.4th ___ [2014 Cal. Lexis 5468, 174].)

While the judge in the case at bar was not so quick to recognize the potential prejudice of his empathetic comment, there is no basis to conclude that his comment, like that in *People v. Banks*, *supra*, ___ Cal.4th ___, stemmed from anything other than a desire to put the witness at ease. There is no basis to conclude that the judge's improper comment was motivated by, or was evidence of, bias. However, the most prudent course for the court when confronted with a distraught witness would be to say nothing showing empathy for the witness's pain and wait for the witness to compose herself. The court did not simply offer the witness a tissue or just say that it would wait for the witness to compose herself. The court effectively said it "kn[e]w" the authenticity of her pain. I do not agree with the majority's assessment that *Banks* is distinguishable because the judge here only expressed concern for the witness's discomfort in testifying, rather than saying

2

"'I'm sorry this happened to you'" because both statements effectively communicated to the jury that the witness's testimony is to be believed. Concern for the witness's discomfort in testifying is precisely what creates the implication that the defendant did it and hence constitutes vouching for the witness.

Nonetheless, although not as specific as the admonition in *People v. Banks*, *supra*, ___ Cal.4th ___, the instant court's admonition to the jury to disregard anything that it might believe was indicative of his personal views was adequate to avert the potential harm. The error was harmless. Reversal is not in order.

NOT TO BE PUBLISHED.


JOHNSON, J.